**Scott Davis ADAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–04–089 CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Dec. 1, 2004.

Decided Jan. 26, 2005.

Doug Murphy, Trichter, Murphy & Overstreet, PC, Houston, for appellant.

Michael A. McDougal, Dist. Atty., Monica Strickland, Gail Kikawa McConnell, Asst. Dist. Atty's, Conroe, for state.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury convicted Scott Davis Adams of driving while intoxicated. The trial court sentenced him to 180 days in the county jail, suspended the imposition of sentence, and placed him on probation for one year. The trial court also required Adams to do forty hours of community service and fined him $1,500. We affirm.

Officer Bodden testified for the State. In the early morning hours, Bodden's radar clocked Adams' vehicle speed at 49 m.p.h. in a 30 m.p.h. zone. Bodden stopped the car for speeding. Inside the vehicle were Adams and two passengers. Bodden detected a "strong odor of alcoholic beverage coming from inside the vehicle." He asked Adams, the driver, to step out of the car. Bodden testified the only sign of intoxication at that point was the odor of alcohol on Adams' breath. When Bodden directed Adams to step out of the car and walk in front of the police car, Adams had no difficulty in following those instructions; Adams did not stagger or stumble.

Officer Bodden administered the following field sobriety tests recorded on videotape at the scene: horizontal gaze nystagmus test (HGN), nine-step walk-and-turn test, and the one-leg stand test. Polite and cooperative, Adams did everything Bodden asked of him. Adams exhibited six clues, the maximum number possible, on the HGN test. See *Howard v. State*, 137 S.W.3d 282, 284 (Tex.App.-Fort Worth 2004, no pet.). Out of eight possible clues on the walk-and-turn test, Adams exhibited four. Bodden testified Adams was "unable to maintain [his] balance during the instruction phase," stepped off the line, missed heel to toe, and performed an improper turn. Of the four possible clues on the one-leg stand test, Adams exhibited only one. He swayed while trying to balance himself. Officer Bodden also administered the portable breath test (PBT) which indicated the presence of alcohol. When asked what impairment of mental or physical faculties the defendant showed at the stop, Bodden pointed to Adams' "inability to observe the speed limits," the clues observed during the field sobriety tests, and the alcohol odor on his breath. Based on the combination of the field tests and his observations, Bodden arrested Adams for DWI and took him to the police station to conduct the Intoxilyzer 5000 breath test. From the time of the stop to the time of the Intoxilyzer 5000 test, Adams did not consume any alcohol. The results of the Intoxilyzer 5000 test were readings of .09 and .094. The officer agreed it was possible for a person to fail the breath test at the later time (the Intoxilyzer 5000 test), but pass a breath test at the time of the stop.

■ In issue one Adams argues the evidence was factually insufficient to support his conviction. The Court of Criminal Appeals has recently restated the standard for reviewing factual sufficiency as follows:

There is only one question to be answered in a factual-sufficiency review: Considering all the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict

should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004) (footnote omitted). Adams argues the evidence that he was intoxicated at the "time of driving" was weak and outweighed by contrary evidence. First, he says the lack of extrapolation evidence from the .09 and .094 Intoxilyzer test back to the time of driving renders the evidence factually insufficient. Next, he contends the field sobriety tests were not administered correctly and do not show that Adams' mental or physical faculties were impaired by reason of introduction of alcohol into the body.

The charge tracked the two definitions of intoxication contained in Tex. Pen.Code Ann. § 49.01(2) (Vernon 2003). Those definitions set forth alternate means for the State to prove intoxication: by proving loss of normal use of physical or mental faculties by reason of the introduction of alcohol into the body; and/or by proving an alcohol concentration of .08 or more. See *id.*; see also *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex.Crim.App.2003). Adams says the State did not prove either means.

The jury heard Bodden testify that Adams was speeding, had alcohol on his breath, exhibited all six clues on the HGN test, four clues out of eight on the walk-and-turn test, and one clue on the one-leg stand test. The Intoxilyzer 5000 test, administered fifty-four minutes after the stop, showed intoxication levels of .09 and .094. The State offered no extrapolation evidence to show the alcohol level at the time of stop was .08 or above. Julie Evans, the State's expert, testified it was "possible that [Adams' blood alcohol level was below] .08 at the time of driving." Bodden acknowledged Adams had no difficulty in following instructions or in retrieving his driver's license and insurance card, and he did not stagger or stumble. The jury also viewed a videotape of Adams at the stop that night. The members of the jury were free to evaluate and weigh the evidence. See *Zuniga*, 144 S.W.3d at 482 ("Because the jury is the judge of the facts and the appellate court's role is to review criminal convictions, the appellate court is not allowed to 'find' facts or substitute its judgment for that of the jury."). Viewing the foregoing evidence in a neutral light, favoring neither party and giving due deference to the fact finder's determinations, we conclude there is factually sufficient evidence that Adams was intoxicated at the time he was observed driving in a public place. See *Stewart v. State*, 129 S.W.3d 93, 96–97 (Tex.Crim.App.2004) (Court of Criminal Appeals held that breath test results, along with the officer's testimony and the videotape of appellant, were probative evidence of the appellant's intoxication.). Issue one is overruled.

In issue two, Adams argues the trial court erred in failing to grant a mistrial when Officer Bodden testified the portable breath test (PBT) showed Adams "[had an] alcohol concentration of over .08." Sustaining Adams' objection, the trial judge ruled the PBT result was admissible only to show the presence or absence of alcohol, but not to show the actual quantitative amount of alcohol. The following exchange then occurred in the presence of the jury:

Q. [Prosecutor]: After you [Officer Bodden] had [Adams] perform the one-leg stand, did you have [him] perform any other tests?

A. [Officer Bodden]: Yes, I gave him a preliminary breath test for his benefit.

[Defense Counsel]: I'd reurge the same objection.

[The Court]: Objection is overruled.

Q. What did the preliminary breath test show?

A. That he did have alcohol concentration of over .08.

[Defense Counsel]: Objection, that's a violation of the motion in limine.

The prosecutor agreed with both the trial judge and defense counsel that Bodden should not have mentioned the quantitative amount. Officer Bodden testified he thought he "could say it was over .08 but not the numeric amount." He indicated he was unaware that all he could say was that the PBT showed the presence of alcohol. The trial court instructed the jury to disregard Bodden's answer, but denied defendant's request for a mistrial.

■■■ "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999). We review the denial of a motion for mistrial under an abuse of discretion standard. *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App.2004). To determine whether a given error necessitates a mistrial, the reviewing court examines the particular facts of the case. *Id.* In most instances, the trial court's instruction to disregard cures any harm. See *id.* Adams argues the trial judge's instruction in this case was insufficient to cure the harm from the inadmissible evidence. We quote the trial court's instruction to the jury:

Members of the jury, the law is that this portable breath test that the officers carry in their car, any results of the quantitative amount of alcohol are not admissible. The qualitative amount, that is, whether or not the presence or absence of alcohol is admissible but not what percentage it is that test showed, if any. It's simply not admissible and the officer maybe wasn't aware of that. You're instructed to disregard any evidence of the qualitative [sic] amount or amount of concentration that the portable breath test showed.

When the trial court instructs a jury to disregard, we presume the jury follows the trial court's instructions. See *Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex.Crim. App.1988). Only for "highly prejudicial and incurable errors" is a mistrial appropriate. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App.2003), cert. denied, *Simpson v. Texas*, —— U.S. ——, 124 S.Ct. 2837, 159 L.Ed.2d, 270, 72 U.S.L.W. 3749 (2004).

The Waco court has gauged the effectiveness of an instruction to disregard by using the following factors: "the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction given; the weight of the' incriminating evidence; and the harm to the accused as measured by the severity of the sentence." *Roberson v. State*, 100 S.W.3d 36, 41 (Tex.App.-Waco 2002, pet. ref'd). Applying those factors, we find the trial court's instruction to disregard was effective. Officer Bodden's remark appears to have been inadvertent. Bodden stated he was unaware he could not say the test result was above the .08 figure. The prosecutor acknowledged the answer should not have been given in the manner it was, and did not mention the quantitative result of the PBT again. The trial court's instruction to disregard the evidence was pointed, clear, and definitive: the trial judge expressly stated the evidence was inadmissible and the jury was not to consider it. There was other evidence supporting the "intoxi-

cation" element, including the officer's testimony concerning the alcohol odor, the field sobriety tests, the video, and the Intoxilyzer 5000 test. Finally, given the statutory punishment for a class B DWI misdemeanor, the sentence was not severe. Although Texas law provides for a minimum term of seventy-two hours confinement, the trial court, pursuant to statutory authority, suspended the imposition of the sentence and placed Adams on community supervision. See Tex. Pen.Code Ann. § 49.04(b) (Vernon 2003); Tex.Code Crim. Proc. Ann. art. 42.12, § 13 (Vernon Supp. 2004–2005).

We find the State's question, and the officer's response that the reading was over .08 were not so inflammatory that they could not be cured by an instruction to disregard. In light of the facts surrounding the field sobriety tests and the definitiveness of the trial court's instruction, we hold the trial judge's instruction to disregard cured any error from the improper evidence.

■ Appellant contends the State engaged in prosecutorial misconduct when the prosecutor elicited from Officer Bodden the PBT result. Officer Bodden was present on the witness stand at the time appellant objected to the admission of the PBT result and at the time the trial judge explained his ruling about the inadmissibility of the quantitative result on the PBT. The prosecutor may reasonably have assumed Bodden understood the trial judge's instructions. The record does not support appellant's claim of prosecutorial misconduct. Issue two is overruled.

■ In issue three, Adams argues the trial court erred in not granting a new trial because the jury considered evidence that

had previously been suppressed. According to Adams, during their deliberations the jurors turned up the volume to hear Officer Bodden state on the videotape that Adams' PBT test was over the legal limit at the time of the stop. Adams says this was evidence the State was to remove from the videotape, but did not. Defense counsel further asserts that a juror told him and the prosecutor "the three 'not guilty' jurors changed their votes to guilty" right after hearing the videotape. The Rules of Appellate Procedure provide that the trial court should grant a new trial if, "after retiring to deliberate, the jury has received other evidence . . . ." Tex. R.App. P. 21.3(f).

■ The trial court granted Adams a hearing on his motion for new trial. The motion did not include an affidavit and was not verified. In this context, the order denying a motion for new trial unsupported by any evidence cannot be disturbed on appeal. See *King v. State*, 29 S.W.3d 556, 568–69 (Tex.Crim.App.2000). With no supporting evidence from any juror, the trial court did not abuse its discretion in denying the motion for new trial.[1] Issue tree is overruled.

■ In issue four, Adams argues the trial court "erred in permitting evidence of the results of the Intoxilyzer without extrapolation when the evidence was more prejudicial than probat[ive], in violation of Rule 403 of the Texas Rules of Evidence." We review the admission or exclusion of evidence under an abuse of discretion standard. See *Sells v. State*, 121 S.W.3d 748, 766 (Tex.Crim.App.2003), cert. denied, 540 U.S. 986, 124 S.Ct. 511, 157 L.Ed.2d 378 (2003). The State argues the issue was not preserved. We disagree.

---

1. Because the trial court was not presented with any testimony from jurors, we need not decide whether juror testimony concerning consideration of excluded evidence is a type of "outside influence" under Texas Rules of Evidence 606(b).

Appellant objected to Officer Bodden's initial reference to the .09 and .094 results, and the trial court indicated the issue would be dealt with later. During the voir dire of the State's expert intoxilyzer witness, appellant again objected to the admissibility of the breath test results and lodged a Rule 403 objection, along with other objections. The trial court's ruling on the admissibility of the intoxilyzer test result encompassed appellant's relevancy and Rule 403 objections.

■ Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Tex.R. Evid. 403. Rule 403 presumes the "admissibility of all relevant evidence and authorizes a trial court to exclude [the] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App.1999). The Court of Criminal Appeals has held that an intoxilyzer test result is relevant under either definition of intoxication, even without extrapolation evidence, to show intoxication at the time the accused drove. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim.App.2004) ("[B]reath test results tended to make it more probable that [defendant] was intoxicated at the time she drove under either definition of intoxication because they provided evidence that she had consumed alcohol."). The intoxilyzer is probative on the element of intoxication. See *id.*; see also *State v. Mechler*, 123 S.W.3d 449, 455 (Tex.App.-Houston [14th Dist.] 2003, pet. granted).

■ In determining whether the prejudice of admitting the evidence substantially outweighs its probative value, the relevant criteria include the following: (1) how compellingly the evidence makes a fact of consequence more or less probable; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponents's need for the evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. See *Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003); *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim.App.1991) (op. on reh'g). But is the evidence here—the breath test result without extrapolation evidence—substantially more prejudicial than probative? The record in this case demonstrates it is not.

■ The first factor asks how compellingly the evidence serves to make a fact of consequence more or less probable. The fact of consequence is whether Adams was intoxicated while operating the vehicle. The evidence of the breath test served to make that fact more probable. See *Martinez v. State*, 155 S.W.3d 491, 498 (Tex. App.-San Antonio 2004, no pet. h.) (citing *Stewart*, 129 S.W.3d at 96). Second, the intoxilyzer test results would not have impressed the jury in some irrational but indelible way. The jury was instructed to convict Adams if, while he was intoxicated, he operated a motor vehicle; the indictment had similar language. The jury was not instructed to find Adams guilty if he was intoxicated when he took the Intoxilyzer breath test. Further, the evidence of the Intoxilyzer test result applies to an allegation in the indictment. When evidence specifically pertains to an allegation in the indictment, the evidence is not unfairly prejudicial under a Rule 403 balancing test. See *Manning*, 114 S.W.3d at 928. In addition, the jury heard testimony on the limitations of the Intoxilyzer 5000 test

results. Third, because the breath test results were proof of the charged offense, the amount of time the State spent developing it is inconsequential since the jury would not be distracted from the charged offense. *Id.* Fourth, although the State had other evidence to prove Adams' intoxication, that evidence is somewhat weak. The State needed the Intoxilyzer 5000 test result. The factors all weigh in favor of probativeness. Balancing the factors, we find there is not a clear disparity between the degree of prejudice of Adams' Intoxilyzer results and their probative value. The trial court did not abuse its discretion in admitting the evidence. Issue four is overruled.

In issue five, appellant argues the trial court erred in increasing Adams' sentence when Adams would not agree to waive his right to appeal. Adams filed an election to have the trial court determine punishment. Upon inquiry, the trial judge was told there was an agreement on punishment. The trial judge then stated he normally does not accept an agreement on punishment unless the agreement includes a waiver of appeal. Defense counsel informed the trial judge Adams did not want to waive his right to appeal. The trial judge did not accept the punishment agreement and proceeded to hold a hearing on punishment. The trial court assessed the same punishment against Adams as that in the proposed agreement, with the exception that the fine was increased from $500 to $1,500.

Appellant does not direct us to any evidence in the record showing the trial judge increased the fine because Adams refused to waive his appeal; and we have found none. Adams testified at the punishment hearing. He explained that on the night of the offense he had four drinks, the last at 2:00 a.m. He also testified he was a cable installer, had been married for three years, had no children, and did not support anyone other than his wife. Adams indicated he had never before been arrested or convicted of any offense. The trial court may have decided to impress upon defendant the seriousness of the offense and may have concluded that because defendant was employed, he could afford a $1,500 fine. Without evidence in the record to support appellant's claim, we overrule issue five.

The conviction is affirmed.

AFFIRMED.