In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-289 CR


____________________



MARCUS DESHAWN MITCHELL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 92170






 MEMORANDUM OPINION 


 A jury found Marcus Deshawn Mitchell guilty of possessing a controlled substance,
namely codeine. In addition, Mitchell pled true to an enhancement allegation. The trial court
sentenced Mitchell to twenty years' confinement in the Institutional Division of the Texas
Department of Criminal Justice. Mitchell raises two appellate issues. We affirm. 


Background 


 While on routine patrol, Officer James Graham saw Mitchell's car. The officer knew
that Mitchell had an outstanding warrant and followed the car into a barber shop's parking
lot. As Mitchell got out of the car, Officer Graham informed Mitchell that he was under
arrest because of the outstanding warrant. Officer Graham asked Mitchell to turn around and
put his hands behind his back. Instead of doing so, Mitchell ran. Officer Graham used
pepper spray on Mitchell, hitting one side of his face. Mitchell surrendered to Officer
Graham approximately two blocks away. Another patrolman arrived to assist Officer
Graham. The officers placed Mitchell in a patrol car and returned to the barber shop parking
lot. Officer Graham arrested Mitchell for the outstanding warrant and for evading detention. 
While conducting an inventory search of Mitchell's car, Officer Graham found a purple cup
in the center console area of the floorboard. The purple cup contained a substance that
Officer Graham believed was codeine. After placing the substance in a container, the officer
marked the cup and substance and placed them into the secured evidence "In" box located
at the police station. A laboratory analysis later determined that the substance was codeine,
in an aggregate amount of 113.05 grams.

Issue One: Improper Search


 In issue one, Mitchell complains that the officers conducted an improper and
unreasonable inventory search of his car in violation of his constitutional and statutory rights.
Mitchell also contends that the evidence obtained in the search was inadmissible. This issue
requires us to review two intertwined elements: the legality of the impoundment of
Mitchell's car and the legality of the inventory search. Generally, the police may not conduct
an inventory search unless they first lawfully impound the vehicle. South Dakota v.
Opperman, 428 U.S. 364, 375-76, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Impoundment


 In construing Opperman, the Texas Court of Criminal Appeals describes several 
situations in which the police can lawfully impound a vehicle. Benavides v. State, 600
S.W.2d 809 (Tex. Crim. App. 1980). Non-exclusive examples include: (1) when a vehicle
is illegally parked; (2) when a vehicle is stolen or the police reasonably believe it is stolen;
and (3) when a vehicle is abandoned or so defective that it creates a hazard to others. Id. at
811. Another instance of lawful impoundment, pertinent here, occurs when the police place
the driver under custodial arrest and no other alternative is available to insure the vehicle's
protection. Id.; accord Delgado v. State, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986);
Daniels v. State, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980); Evers v. State, 576 S.W.2d
46, 50 (Tex. Crim. App. 1978). However, when a driver is arrested, the law does not require
police officers to independently investigate possible impoundment alternatives absent
objectively demonstrable evidence that such alternatives exist. Garza v. State, 137 S.W.3d
878, 882 (Tex. App.- Houston [1st Dist.] 2004, pet. ref'd); Mayberry v. State, 830 S.W.2d
176, 180 (Tex. App.- Dallas 1992, pet. ref'd).

 In this case, the State showed that the police lawfully arrested Mitchell and that
Mitchell was alone in the car. There is no evidence that others were readily available to take
care of the car. Because the police are not required to independently investigate
impoundment alternatives, the police were not required to locate the owner of the barber shop
to determine if Mitchell's car could remain in the lot. See Garza, 137 S.W.3d at 882;
Mayberry, 830 S.W.2d at 180. Under the evidence presented here, the State met its burden
of proof to show that the police lawfully impounded Mitchell's car. See Josey v. State, 981
S.W.2d 831, 842-43 (Tex. App.- Houston [14th Dist.] 1998, pet. ref'd); Mayberry, 830
S.W.2d at180.

Inventory Search 


 When the police make a custodial arrest of a driver and lawfully impound his vehicle,
they may perform a routine inventory search of its contents. Opperman, 428 U.S. at 375-76. 
The purposes of an inventory search are: to protect the owner's property while it remains in
police custody; to protect the police against claims or disputes over lost or stolen property;
and to protect the police from potential dangers. Delgado v. State, 718 S.W.2d 718, 721
(Tex. Crim. App. 1986). In Opperman, the United States Supreme Court recognized that the
caretaking, noninvestigatory purposes of inventory searches of lawfully impounded
automobiles are reasonable under the Fourth Amendment. Opperman, 96 S.Ct. at 3098.

 An inventory search is constitutionally permissible as long as it is not a "ruse for a
general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S.
1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Inventories must be conducted in good faith and
pursuant to reasonable, standardized police procedures. Colorado v. Bertine, 479 U.S. 367,
374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The State has the burden to show that its search
did not deviate from police department policy. See Moberg v. State, 810 S.W.2d 190, 195
(Tex. Crim. App. 1991). The State may satisfy its burden by showing an inventory policy
existed and the policy was followed. Id. In the absence of evidence to the contrary,
testimony by a police officer that the officers adhered to the standard procedure is sufficient
evidence that the impoundment and inventory were conducted in accordance with police
department policy. Mayberry, 830 S.W.2d at 181. "If appellant wished to appeal the policy
or alleged deviation from that policy, then appellant must develop the record." Evers, 576
S.W.2d at 50 n.5.

 Here, Officer Graham's testimony is sufficient to meet the State's burden. He stated
that, as a matter of procedure, the police conduct routine inventories of vehicles to protect
the department and tow truck drivers from liability for any property left in the vehicles. 
Further, the officer described the inventory search of Mitchell's vehicle. Appellant
cross-examined Officer Graham but asked no questions about the department's inventory
policy. In addition, the record does not show any deviation from police department policy. 

 Because the evidence showed that the police lawfully impounded Mitchell's car and
conducted an inventory of it in accord with standard policy, the inventory search did not
violate Mitchell's constitutional and statutory rights. Issue one is overruled.

Issue Two: Motion for Mistrial/Extraneous Evidence


 In issue two Mitchell contends the trial court erred and abused its discretion when it
denied his motion for mistrial. Mitchell complains of three specific rulings. In the first two,
the trial court overruled Mitchell's objections to extraneous offense evidence. In the last
instance, the trial court sustained Mitchell's objection but overruled his motion for mistrial. 

Overruled Objections 


 Early in Officer Graham's testimony, the trial court twice overruled Mitchell's
objections to evidence of an extraneous offense. The first instance occurred as follows:

 Prosecutor: Okay. Did you know Marcus Mitchell before
December 11th, 2003?


 Defense Counsel: Objection, your Honor, irrelevant.


 Court: Overruled.


 Defense Counsel: Additional objection lodged under Rule 403, your
Honor, any probative value is outweighed by
unfair, undue prejudice. 


 Court: It's overruled, sir. 


The prosecutor then asked Officer Graham to identify the defendant. Officer Graham
identified Mitchell as the person "wearing a checkered shirt." The prosecutor questioned the
officer further and drew another objection.

 Prosecutor: So, you were aware of Marcus Mitchell through
prior dealings before December 11, 2003?


 Officer: Yes, sir.


 Prosecutor: And, under what circumstances did you come into
contact with him on that date?


 Officer: I observed Marcus's vehicle and I knew Marcus
had a warrant out -


 Defense Counsel: Objection, your Honor. It's non-responsive, his
response dealing with a warrant.


 Court: Overruled, sir.


 Defense Counsel: Additionally, your Honor, any testimony relating
to an outstanding warrant, I object under Rule
403, any probative value is outweighed by undue
prejudice. 


 Court: That's overruled, sir. 


 We review a trial court's ruling regarding the admission of extraneous offenses for an
abuse of discretion. Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005), cert.
denied, 74 U.S.L.W. 3246, 126 S.Ct 481, 163 L.Ed.2d 367 (2005). "[A]s long as the trial
court's ruling was at least within the zone of reasonable disagreement, the appellate court will
not intercede." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The
long-standing rule in Texas is that "the jury is entitled to know all the relevant surrounding
facts and circumstances of the charged offense; an offense is not tried in a vacuum." Moreno
v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). 

 In this case, Officer Graham's testimony is admissible as contextual evidence. See
Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); White v. State, 190 S.W.3d 226,
231 (Tex. App.- Houston [1st Dist.] 2006, no pet.) (finding officer's testimony necessary to
explain how defendant was arrested and presented for identification); Swarb v. State 125
S.W.3d 672, 682 (Tex. App.- Houston [1st Dist.] 2003, pet. dism'd) (finding that arrest
warrant provided jury with context to show why officers were searching for appellant and
how they found controlled substance in his vehicle). "The purpose of admitting extraneous
evidence as same transaction contextual evidence is to place the instant offense in context."
Nguyen v. State, 177 S.W.3d 659, 667 (Tex. App.- Houston [1st Dist.] 2005, pet. ref'd). 
Contextual evidence provides the jury with information that is essential to understanding the
circumstances of events that are blended or interwoven. Camacho v. State, 864 S.W.2d 524,
532 (Tex. Crim. App. 1993).

 Officer Graham's testimony about the outstanding warrant helped the jury understand
why he stopped Mitchell and immediately tried to arrest him, conduct that generally does not
occur for routine traffic stops. The outstanding warrant was for possession of a controlled
substance and the warrant's existence also explains why Mitchell ran away. (1) These events
led to the inventory search during which the officers found codeine in Mitchell's car. We
find this evidence regarding the existence of an outstanding warrant to be admissible as
transactional contextual evidence.

 However, even if admissible, contextual evidence might in some circumstances
require exclusion when its prejudicial effect is outweighed by its probative value. Nguyen,
177 S.W.3d at 668. Thus, we further consider whether the admission of this contextual
evidence over Mitchell's first two objections satisfies the balancing test required by Rule
403. See Tex. R. Evid. 403; see also Nguyen, 177 S.W.3d at 668. 

 In general, a trial court must perform a balancing test to determine if the evidence's
probative value substantially outweighs its prejudicial effect. Nguyen, 177 S.W.3d at 668. 
But, we note that "the prejudicial nature of contextual evidence rarely renders such evidence
inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal
transaction." Swarb, 125 S.W.3d at 681. 

 Here, Officer Graham's testimony about the outstanding warrant provided the
probable cause for Mitchell's detention and arrest. Further, the testimony was brief and
neither the prosecutor nor Officer Graham emphasized the warrant other than to explain the
necessary events of this transaction. In these circumstances, we find that the evidence had
little chance of prejudicing the jury. Thus, we hold that because the prejudicial value of the
evidence does not outweigh its probative value, the trial court did not abuse its discretion in
admitting this extraneous evidence over Mitchell's objections.

Denial of Motion for Mistrial


 After the trial court sustained Mitchell's third objection to extraneous offense
evidence, Mitchell moved for a mistrial and the trial court denied his motion as follows.

 Prosecutor: Now, for what was [Mitchell] arrested there at 560
Buford?


 Officer: For evading and the warrant - possession of controlled
substance.


 Defense Counsel: Objection, you Honor, as far as to the non-responsive
what the warrant was for - the purpose.


 Court: He didn't testify what the warrant was for. The objection
is overruled.


 Defense Counsel: He did, your Honor.


 Court: No, he did not.


 Prosecutor: Other than evading detention in this particular situation
and the outstanding warrants is what the answer was.


 Defense Counsel: Your Honor, if I may. He responded with what the
warrant was for.


 Court: Your objection is overruled. He did not.


 Defense Counsel: Okay. Can I make a bill, your Honor.


 Court: You can do that later. Go ahead.


 Prosecutor: So, you arrested him for the outstanding warrants and the
evading detention that had just taken place?

 

 Officer: Yes, sir. 


 After the prosecutor concluded his direct examination of Officer Graham, Mitchell's
attorney elicited the following cross-examination testimony from Graham.

 Defense Counsel: Now, a moment ago when I objected and [the Prosecutor]
was questioning you about a warrant from which Mr.
Mitchell was arrested, did you give a response - did you
say what that warrant was for? 


 Officer: I believe so; yes, sir.


 Defense Counsel: You did; is that right?


 Officer: Yes, sir.


 Defense Counsel: Your Honor, at this time I renew my objection.


 Court: And your objection is?


 Defense Counsel: That first of all irrelevant, your Honor, what the warrant
was for.


 Court: That objection is sustained.


 Defense Counsel: Okay. Your Honor, I ask the jury be instructed.


 Court: The jury will disregard that statement of the officer.


 Defense Counsel: If they could -- And I move for a mistrial.


 Court: That is denied, sir. 


 When the trial court sustains an objection and instructs the jury to disregard the
testimony but denies a motion for mistrial, the issue is whether the trial court abused its
discretion by denying the mistrial. Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App.
2004). In reviewing the ruling on appeal, we must uphold the trial court's ruling if it was
within the zone of reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004). Generally, an instruction to disregard cures any prejudicial effect. Hawkins,
135 S.W.3d at 77. The law requires a mistrial only if the prejudice is incurable. Id. In determining whether the trial court abused its discretion in denying the mistrial,
we consider the Mosley factors: "(1) severity of the misconduct (the magnitude of the
prejudicial effect . . .), (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge), and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction)." Ramon v. State, 159
S.W.3d 927, 929 (Tex. Crim. App. 2004) (quoting Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998)). Following Mosley, we begin by examining the evidence's
prejudicial effect. 

 We first note that it was ambiguous whether the prosecutor's question about the
reason for the arrest solicited a response regarding the nature of the outstanding warrant. 
Mitchell attempted to evade arrest on the day Officer Graham arrested him for the
outstanding warrant that charged Mitchell with possession of controlled substance. But, the
police later arrested Mitchell for possession of codeine that they discovered that day in his
car. Because the events involved two possession charges, the questions and testimony easily
could be confusing. Thus, it is not clear that the prosecutor intended to inject the outstanding
warrant's possession charge as evidence in this case. Further, the trial judge's response
indicates that the court did not understand Officer Graham's testimony to relate to the
outstanding warrant's possession charge.

 Next, after the trial court overruled defense counsel's objection, the prosecutor
rephrased his question to restrict Graham's answer to proper testimony. The prosecutor
asked: "So, you arrested him for the outstanding warrants and the evading detention that had
just taken place?" Graham answered affirmatively. The prosecutor did not emphasize the
improper testimony to the jury and the officer did not elaborate further on the nature of the
outstanding warrant. See id. 

 An additional factor reducing the possibility that the testimony prejudiced the jury is
the testimony's nature. The extraneous offense was possession of a controlled substance and
the charged offense was possession of a controlled substance. Thus, the extraneous offense
was not more heinous or inflammatory than the charged offense. Gregory v. State, 159
S.W.3d 254, 262 (Tex. App.- Beaumont 2005, pet. ref'd). 

 A final factor restricting the possibility that the testimony caused prejudice is the short
amount of time between the testimony and trial court's limiting instruction. (2)
 During Officer
Graham's direct examination, the State asked why the officers arrested Mitchell. Officer
Graham replied: "For evading and the warrant - possession of controlled substance." On
cross-examination, Graham admitted that his answer explained the nature of Mitchell's
outstanding warrant and, at counsel's request, the trial court promptly instructed the jury to
disregard the officer's answer. This short interval further reduced any risk of prejudice. Cf.
Gregory,159 S.W.3d at 262 (involving harm analysis of trial court's denial of limiting
instruction requested contemporaneously with the introduction of the extraneous evidence
and concluding that appellant's substantial rights were not affected when only a short time
passed between the admission of objectionable evidence and the limiting instruction given
in the charge); Lemmons v. State, 75 S.W.3d 513, 525 (Tex. App.- San Antonio 2002, pet.
ref'd) (involving harm analysis of trial court's denial of limiting instruction requested
contemporaneously with the jury's hearing the extraneous evidence and concluding that error
did not affect a substantial right when only three to four hours after the jury heard the
evidence, the trial court issued a limiting instruction in the charge). Thus, we find that the
extraneous offense evidence had little, if any, prejudicial effect. We resolve the first Mosley
factor in favor of the trial court's denial of Mitchell's motion for mistrial.

 Second, under the Mosley factors, we consider how effectively the trial court
attempted to cure any errors in admitting evidence. Mosley, 983 S.W.2d at 259. Here, the
trial court instructed the jury to disregard Officer Graham's statement about the nature of the
outstanding warrant. The record shows that the trial court did not give the instruction
contemporaneously with the evidence's introduction because the court did not understand
Officer Graham's testimony to relate to the prior warrant. However, once Mitchell clearly
established that Officer Graham improperly referred to the outstanding warrant's nature, the
trial court quickly granted Mitchell's objection and instructed the jury to disregard the
Officer's statement. 

 "Ordinarily, a prompt instruction to disregard will cure error associated with an
improper question and answer, even one regarding extraneous offenses." Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2000). When the trial court instructs a jury to disregard
certain testimony, we presume the jury follows the trial court's instructions. Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Further, the trial court should grant a mistrial
only if the error is "highly prejudicial and incurable." Simpson v. State, 119 S.W.3d 262, 272
(Tex. Crim. App. 2003); Adams v. State, 156 S.W.3d 152, 157 (Tex. App.- Beaumont 2005,
no pet.).

 In this case, we find that the error is neither highly prejudicial nor incurable. The
witness's short, unembellished, and ambiguous reference to the nature of Mitchell's
outstanding warrant was not so inflammatory that it undermined the effectiveness of the trial
court's jury instruction to disregard. See Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim.
App. 1992) (finding witness's improper testimony, "this caller also provided information that
she had a son . . . who had recently been released from the penitentiary," was cured by trial
court's instruction to disregard); see also Drake v. State, 123 S.W.3d 596, 604 (Tex. App.-
Houston [14th Dist.] 2003, pet. ref'd) (collecting other cases holding similarly).

 Mitchell complains that the trial court's instruction was "tepid." As support for his
assertion, appellant provides the following citation: "Hawkins v. State, 99 S.W.3d 890, 902
(Tex. App.- Corpus Christi 2003)." Importantly however, appellant fails to note that his
"authority" was overruled on the precise point for which he cites it. See Hawkins v. State,
135 S.W.3d 72, 84 (Tex. Crim. App. 2004). In Hawkins, the Court of Criminal Appeals
stated:

 We also disagree with the Court of Appeals's characterization of the
instruction "the jury is so instructed" as a "tepid" instruction of "limited
curative effect." When counsel asks for a particular instruction and the trial
court accedes to the request by saying "the jury is so instructed," that
instruction will in most cases be considered effective to cure the harm from an
improper argument. 


Id. Here, defense counsel asked that "the jury be instructed." The trial court complied by
stating, "The jury will disregard that statement of the officer." We find the trial court's 
instruction sufficiently effective to cure the harm, if any, of Officer Graham's testimony
about the outstanding warrant's nature. We resolve the second Mosley factor, the curative
measure's effectiveness, in favor of the trial court's denial of Mitchell's motion for mistrial.

 The third Mosley factor requires us to determine the strength of the evidence
supporting Mitchell's conviction. See Mosley, 983 S.W.2d at 259. In this case, the evidence
favorable to the conviction is strong and uncontradicted. The arresting officer testified that
he found the codeine in Mitchell's car in an inventory search after Mitchell's arrest on the
outstanding warrant. There is no evidence that anyone was with Mitchell in the car. The
officer testified that he "logged" the controlled substance "into evidence." The evidence
clerk explained the security procedures in the evidence room. The laboratory analyst
explained how she determined the substance was codeine and how she determined the
amount of codeine present in the cup. Finally, Mitchell presented no contradictory evidence. 
Thus, we resolve the third Mosley factor in favor of the trial court's denial of the motion for
mistrial. 

 Having decided all of the Mosley factors adversely to Mitchell, we overrule his second
point. Accordingly, we affirm the trial court's judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on April 13, 2006

Opinion Delivered July 26, 2006

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. The jury did not learn about the warrant's nature until later in Officer Graham's
testimony. We will review any prejudice caused by this disclosure in a subsequent section
of this opinion.
2. Officer Graham's answer is at page twenty of volume four of the reporter's record. 
At page thirty-one, the State's attorney concluded his examination of Officer Graham. In
answer to defense counsel's question at page thirty-three of volume four, Officer Graham
acknowledged that he stated the nature of the outstanding warrant during his direct
examination.