In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00242-CR**
_____

**DELIA GUALDINA VELASQUEZ, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-07-10283-CR**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Delia Gualdina Velasquez for aggravated kidnapping by using or exhibiting a deadly weapon, namely a firearm. *See* Tex. Penal Code Ann. § 20.04(b). Velasquez pleaded "not guilty." A jury found Velasquez guilty as charged. The jury assessed punishment at forty-five years of confinement. Raising two appellate issues, Velasquez appeals. We affirm the trial court's judgment.

Evidence at Trial

Fifteen-year-old Luke[1] testified that on January 24, 2018, he was at his house where he lived with his father, Lee, and his uncle, Eric. That morning, Eric was at work, Lee was home, and Luke had not left for school. Luke testified that his father answered a knock at the door, and a "bigger guy" pushed Lee down and came inside the house with another skinnier man who had a tattoo on his face and a gun. According to Luke, the skinny man, later identified as Jimmy Sanchez, asked where Eric was because he owed them $8000, and Luke told him he was at work. The men asked where jewelry, money, and phones were, Lee gave them phones but said they did not have jewelry or cash, and the "bigger guy" taped Luke's wrist together with duct tape.

Luke testified the men also taped his father's wrists and put a jacket over his head so he could not see. Luke testified that the men told him to stay in his uncle's room and if he came out, they would shoot him. The men said they would drop Lee off at the corner of the street. Luke heard the door shut, and after the men and his father were gone for about five minutes, Luke cut the tape off his wrists, left the house, and when he did not see his father down the street, Luke ran to his neighbor's

---

[1] We refer to the victim and his family members by pseudonyms to protect their privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

house and the neighbor called the police. Luke testified he had never seen or spoken to Velasquez before, and he did not know Velasquez was his father's cousin.

When Luke's uncle, Eric, returned from work, he learned of what had happened and provided law enforcement with Lee's phone number. A ransom call was made to Eric in the presence of law enforcement, and a person on the phone told Eric that they belonged to "the Gulf Cartel," they had kidnapped his brother, and that if Eric did not pay them $20,000, Eric's brother would be killed at that moment. Eric told the kidnappers that he did not have the money, and the person on the call told Eric that if he did not get the money, Eric's family members in Honduras would be in danger. The person also stated that if the police got involved "it's over."

Around 6 p.m. that evening, while law enforcement was meeting with Eric later at the police station and after the perpetrators had called again trying to find out Eric's whereabouts and whether he had obtained the ransom money, Velasquez (whom Eric described as "a distant cousin" from Honduras) called Eric. Law enforcement video footage from the interview room when Eric received the call from Velasquez was admitted into evidence. Velasquez told Eric she called to see if he would attend an upcoming family reunion, and during the conversation she told Eric that her husband's name was Nicholas Chase, which Eric testified was not his complete name.

Eric testified that around 2005, Velasquez had called him and asked him for a $2,000 loan because she was "about to lose her house[.]" He loaned her the money and when she could not pay him the money by their agreed upon date, she gave him the title to her vehicle, which he then registered in his name.

A law enforcement officer testified as to cell phone records admitted into evidence. The cell phone records linked Velasquez and her husband, Nicholas Chase Cunningham, to the kidnapping. A law enforcement officer also testified that the FBI raided the location where Lee was being held, and in the process of attempting to recover Lee from that location, the FBI accidentally shot and killed Lee.

Claudia Rojas testified that she was in custody at the jail when Velasquez was in custody at the jail, and that Velasquez told her that Velasquez's husband, "Nikko," worked for the Cartel and that her husband was in jail. Rojas testified that Velasquez told Rojas that Nikko found out about what happened with Velasquez's car and then Velasquez told Nikko "because [Velasquez] told him that you never do nothing for me and how come you always leave and do nothing for me. So she was struggling with the car, so she didn't think it was fair that the guy took the car away from her." According to Rojas, Velasquez told her that Velasquez had told Nikko about a family member who took a car from her, that it was not fair, that she wanted Nikko to scare him, that Nikko got in contact with one of his friends in jail with a tattoo on his face, that Nikko and the man with the tattoo on his face kidnapped "another guy instead

4

of the family member, the one with the car[,]" and that a "little kid seen . . . Nikko and the guy with the tattoo." Rojas testified that Velasquez said in response to what had happened, "[E]verybody deserves what they get."

Jimmy Sanchez testified that he was going to do whatever Nikko said because when Sanchez got out of jail Nikko gave him food and a place to stay. Sanchez testified about how Velasquez helped plan the crime by showing them where Eric lived and explaining Eric's and Lee's work schedules. Sanchez explained how Nikko and Sanchez kidnapped Lee, that Nikko assaulted Lee in Velasquez's presence, and that they committed the crime because Eric took Velasquez's car when she could not repay what she owed on the loan she received from Eric.

Nicholas Chase Cunningham, who goes by "Nikko," testified that he was married to Velasquez and that he had prior convictions that included convictions for robbery, aggravated robbery, evading arrest, and unauthorized use of a motor vehicle. He admitted he had been a gang member for a long time but denied being affiliated with the Cartel, even though in the ransom call to Eric he said he was part of the Cartel. He testified that he and Jimmy Sanchez committed the crime using a gun that Nikko had obtained, that he had decided to commit the kidnapping for revenge because Velasquez, sometime in 2015, told him that a cousin had taken Velasquez's car. According to Nikko, Velasquez had nothing to do with the crime.

5

Velasquez testified in her own defense. Velasquez testified that around 2005 or 2006, she needed $2,000, Eric loaned her $1,000, and when he came to collect on the loan, she gave him her vehicle. She testified that about ten years later, she told Nikko about the situation with Eric and her car. According to Velasquez, she did not talk to Rojas about her case. Velasquez denied she was involved in the kidnapping or robbery and testified that she only found out about what happened when Nikko told her what happened after the crime had been committed.

## Issues on Appeal

In issue one, Velasquez argues that during the guilt-innocence phase of the trial, the trial court abused its discretion by allowing victim-impact testimony before the jury over the objection from defense counsel that the testimony was not relevant. In issue two, Velasquez argues that during closing argument, the trial court abused its discretion by denying a motion for mistrial after the State presented an improper closing argument to the jury.

## Alleged Victim-Impact Testimony

In her first issue, Velasquez argues the trial court abused its discretion by allowing the following alleged victim-impact testimony when the prosecutor examined Luke:

> [Prosecutor:] And so when you looked down the street and didn't see your dad, how did that make you feel?

[Luke:] I felt sad. I felt, like, a lot of things. I felt bad too that, like, this happened.

. . . .

[Prosecutor:] I'm going to show you State's Exhibit No. 32. Can you tell us who we can see in State's Exhibit 32?

[Luke:] My dad, myself.

[Prosecutor:] What kinds of things would you and your dad do together?

[Luke:] We mostly, like, go to movies and watch --

[Defense counsel:] Object to relevance, Judge. I think this goes to punishment, Judge, if we get there.

THE COURT: I'll allow the question.

[Prosecutor:] What sort of things do y'all like to do?

[Luke:] We liked to go to movies and -- yeah, go to movies and, like, go out and stuff.

[Prosecutor:] And after that day that they took your dad away, was that the last time that you saw your father?

[Luke:] Yes, it was.

According to Velasquez, the questioning of Luke about how he felt when he did not see his father down the street, followed up by questioning about what things Luke liked to do with his father and then whether that was the last time he saw his father, was elicited "to impress upon the jury the effect of the crime on [Luke]." Velasquez argues that "testimony of the impact of the crime on a victim is not relevant during

7

the guilt/innocence stage of the trial [and that] [t]he admission of this evidence violated a substantial right[.]"

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). If the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *Id.*; *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

"Victim-impact" evidence has been defined as evidence concerning the effect of the crime after the crime occurs. *See Reynolds v. State*, 371 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Generally, this evidence is admissible at the punishment phase of trial and not the guilt-innocence phase because it does not tend to make more or less probable the existence of a fact of consequence with respect to guilt or innocence. *Id.*; *Longoria v. State*, 148 S.W.3d 657, 658 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). However, such testimony can be admissible as a "circumstance of the offense." *Longoria*, 148 S.W.3d at 658.

"To preserve a complaint regarding the erroneous admission of victim-impact evidence for appellate review, the defendant must object on the ground that the evidence constitutes impermissible victim-impact evidence." *Reynolds*, 371 S.W.3d at 525 (citing *Karnes v. State*, 127 S.W.3d 184, 195 (Tex. App.—Fort Worth 2003, pet. ref'd) (trial objection that testimony was irrelevant, highly prejudicial, and

8

below threshold requirement of admissibility did not preserve appellate challenge that testimony was inadmissible victim-impact testimony)).

On appeal, Velasquez complains that Luke's testimony was inadmissible victim-impact testimony. However, to preserve her complaint that Luke's challenged testimony was victim-impact testimony, Velasquez was required to make a timely objection on that same basis in the trial court. *See id.* (quoting *Karnes*, 127 S.W.3d at 195) (A trial objection based on relevance does not preserve for appeal a complaint that the testimony was inadmissible victim-impact evidence "because the objection at trial does not comport with the complaint raised on appeal."). Velasquez's relevancy objection during trial does not comport with her complaint on appeal, and therefore she has not preserved her challenge that the victim-impact testimony was improperly admitted. *See id.*

Even if she had properly preserved her complaint that Luke's testimony was inadmissible victim-impact evidence, we conclude the testimony at issue does not constitute victim-impact testimony. Luke's challenged testimony was about the circumstances of the offense and he did not testify regarding the effect the crime had had on his life or how the incident had affected him and his family. *See Mathis v. State*, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002) ("[T]he testimony in the present case did not involve testimony about how third persons were affected by the crime, nor was there any discussion about the character of the victim."); *see also Hayden*

*v. State*, 296 S.W.3d 549, 553 (Tex. Crim. App. 2009) (characterizing, in murder case, victim-impact evidence as "evidence of the effect the victim's death has on other people"). Some victim-background evidence, like the challenged testimony here, is admissible at the guilt phase to provide framework and context. *See Renteria v. State*, 206 S.W.3d 689, 705-06 (Tex. Crim. App. 2006) (finding mother's sometimes-tearful testimony about where the victim attended school, the type of student she was, and what she liked to do was not victim-impact testimony because it did not concern how the murder affected the mother or her family's life); *Matchett v. State*, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996) (holding no error in overruling objection to widow's testimony that she and the victim had been married for twenty-five years, they had five children, and he was home alone on the night of his murder because such testimony was not victim-impact testimony). The trial court did not err in overruling the objection to the challenged testimony.

And even if the trial court erred in admitting the evidence, Velasquez has not shown the admission of the testimony affected her substantial rights. *See* Tex. R. App. P. 44.2(b); *see also Gonzalez*, 544 S.W.3d at 373 (stating that the erroneous admission of evidence is non-constitutional error). Luke's testimony was not inflammatory, and given the other evidence before the jury, we conclude the admission of the evidence did not have a substantial and injurious effect on the jury's verdict. *See* Tex. R. App. P. 44.2(b). We overrule issue one.

Alleged Improper Jury Argument

The following exchange occurred during closing argument by the prosecution:

[Prosecutor]: . . . [Velasquez] sent the guy who deals in kilo-level cocaine, who carries a gun with him everywhere he goes, who has friends like Jimmy Sanchez from prison. That's who she sent. She knew exactly what she ordered up when she told Nikko, "You're always doing things for the Cartel. You never do anything for me."

[Defense Counsel]: Judge, I'm going to object, Your Honor. That's completely outside the record, Judge. I object to that.

THE COURT: Sustained.

[Prosecutor]: Claudia [Rojas] told you that.

[Defense Counsel]: I ask you to strike that from the record.

THE COURT: Disregard the last comment of the prosecutor.

[Defense Counsel]: Mistrial.

THE COURT: Overruled.

[Prosecutor]: Claudia told you that she told her in custody that this defendant said she told Nikko you never do anything for me. And then she sent him to go get her own family members. That's what she did. . . .

On appeal, Velasquez argues that the trial court abused its discretion by denying a motion for mistrial after the State improperly argued during closing argument that Velasquez made a statement to Rojas that was not in evidence. Velasquez argues that although the trial court sustained defense counsel's objection and instructed the jury to disregard the statement, after that the State "reaffirm[ed] the statement to the

jury[.]" According to Velasquez, "[t]he statement, if true, would be damning[,]" and "[t]his Court should not find that the conviction or sentence could not have been affected by this inappropriate argument."[2]

We review the trial court's ruling on an objection to allegedly improper jury argument for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). "To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case." *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).

If a trial court sustains an objection to improper jury argument, to preserve error on appeal, the complaining party must additionally request an instruction to disregard an offending argument if such an instruction could cure the prejudice. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If the prejudice arising from an erroneous jury argument is incurable, the complaining party must move for a mistrial to preserve error for appeal. *Id.* We review the trial court's denial

---

[2] In her appellate brief, Velasquez quoted more of the State's argument. Because she makes no argument as to that portion of the State's argument, we omitted it from the State's argument quoted above as it is not necessary to include for purposes of our analysis.

12

of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the trial court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.*

A mistrial is the appropriate remedy when the objected-to events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances when the prejudice is incurable because it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because a mistrial is an extreme remedy, "a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

In evaluating whether a trial court abused its discretion by denying a defendant's request for a mistrial based on an improper jury argument, appellate courts must balance several factors adopted in *Mosley v. State*, including (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy

13

of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). Velasquez does not discuss the *Mosley* factors in her brief.

Applying the first *Mosley* factor, we must examine the magnitude of the prejudicial effect of the prosecutor's remarks. The jury heard testimony from Velasquez's cell mate about what Velasquez had told the cell mate, it heard testimony from Nikko that he had been in a gang, although he denied he was a member of the Cartel, it heard testimony from Sanchez about the kidnapping and the motive behind it, it heard testimony from Velasquez denying her involvement in the kidnapping but confirming she borrowed money from the victim's family member and that she lost her truck when she did not pay back the loan, and it heard testimony from law enforcement officers about the investigation into the kidnapping and evidence it discovered. Given the evidence presented to the jury, we find that the alleged improper statements by the State had little, if any, prejudicial effect. We resolve the first *Mosley* factor in favor of the trial court's denial of Velasquez's motion for mistrial.

As to the second *Mosley* factor, the measures adopted to cure the misconduct, the trial court immediately sustained defense counsel's objection during closing

14

argument and instructed the jury to disregard the statement. *See id.* at 741. "The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Id.* The trial court should grant a mistrial only if the error is "highly prejudicial and incurable[.]" *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Adams v. State*, 156 S.W.3d 152, 157 (Tex. App.— Beaumont 2005, no pet.). In this case, we find that the error is neither highly prejudicial nor incurable. The trial court's instruction to disregard was sufficiently effective to cure the harm, if any, of the State's statement. *See Archie*, 340 S.W.3d at 741; *see also Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004) (In most cases, an instruction to disregard effectively cures any harm caused by improper testimony.). Accordingly, we resolve the second *Mosley* factor in favor of the trial court's denial of Velasquez's motion for mistrial.

The third *Mosley* factor requires us to determine the certainty of conviction absent the misconduct. *See Archie*, 340 S.W.3d at 739. The jury had testimony and evidence linking Velasquez to the kidnapping. The jury heard Rojas's testimony that while she and Velasquez were in custody, Velasquez told her that Nikko found out about what happened with Velasquez's car "because [Velasquez] told him that you never do nothing for me and how come you always leave and do nothing for me[,] [] she was struggling with the car, [] she didn't think it was fair that the guy took the car away from her." The jury heard Rojas testify that Velasquez told her that

15

Velasquez had told Nikko about a family member who took a car from her, that it was not fair, that she wanted Nikko to scare him, that Nikko got in contact with one of his friends in jail with a tattoo on his face, that Nikko and the man with the tattoo on his face kidnapped "another guy instead of the family member, the one with the car[,]" and that a "little kid seen . . . Nikko and the guy with the tattoo." The jury heard Rojas testify that Velasquez said in response to what had happened, "[E]verybody deserves what they get." Also, before the jury was Sanchez's testimony regarding how Velasquez helped plan the crime by showing them where Eric lived and explaining Eric's and Lee's work schedules, how Nikko and Sanchez kidnapped Lee and Nikko assaulted Lee in Velasquez's presence, and that they were committing the crime because Velasquez was trying to get revenge on Eric after he took her car when she could not repay a loan from him. On this record, absent the alleged improper jury argument, we find the evidence to support the conviction to be strong and find that the jury would have almost surely convicted Velasquez regardless of the State's alleged improper conduct. *See id.* at 742. We resolve the third *Mosley* factor in favor of the trial court's denial of Velasquez's motion for mistrial. Having decided all the *Mosley* factors adversely to Velasquez, we overrule issue two.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 13, 2022
Opinion Delivered June 8, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

17