ACCEPTED
13-15-00514-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/26/2016 9:45:47 AM
Dorian E. Ramirez
CLERK

# NO. 13-15-00514-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/26/2016 9:45:47 AM
DORIAN E. RAMIREZ
Clerk

## JOHN KENNETH LEE,
### Appellant,

## v.

## THE STATE OF TEXAS,
### Appellee.

On Appeal from the
County Court at Law #2
Of Victoria County, Texas
Cause No. 2-103764

## BRIEF FOR THE STATE OF TEXAS

**STEPHEN B. TYLER**
Criminal District Attorney
Victoria County, Texas

**BRENDAN WYATT GUY**
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
bguy@vctx.org
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895

Attorneys for the State of Texas

## ORAL ARGUMENT NOT REQUESTED

# TABLE OF CONTENTS

**PAGE (S)**

TABLE OF CONTENTS ........................................................................i-ii

INDEX OF AUTHORITIES.............................................................iii-v

STATEMENT OF THE FACTS ........................................................1-14

SUMMARY OF ARGUMENT...........................................................14-19

ARGUMENT......................................................................................19-47

I. The trial court did not abuse its discretion in denying
Appellant's motion for a mistrial ...............................................19-38

   A. Legal standard for reviewing denial of a motion for
      mistrial ...................................................................................19-20

   B. The State's opening statement was not improper and
      thus there was no justification for granting a mistrial.......20-27

   C. A mistrial was not required since an instruction to
      disregard would have cured any error ................................27-31

   D. Any error from the State's opening statement was
      harmless ..................................................................................31-38

II. The Appellant has waived any claim of error related to
the denial of his motion for a mistrial........................................38-47

   A. The Appellant waived his claim of error by not first
      seeking a lesser remedy than a mistrial.............................39-41

   B. The Appellant waived his claim of error by not making
      a timely objection when the State first mentioned the
      blood test results...................................................................41-47

**PRAYER** ........................................................................................ **47**

**SIGNATURE** ................................................................................... **47**

**CERTIFICATE OF COMPLIANCE** ...................................................... **48**

**CERTIFICATE OF SERVICE** ............................................................ **49**

# INDEX OF AUTHORITIES

## Texas Cases

*Adams v. State,* **156 S.W. 3d 152**
**(Tex. App.-Beaumont 2005, no pet)** ...................................................... **28**

*Barraza v. State,* **733 S.W. 2d 379**
**(Tex. App.-Corpus Christi,** *aff'd,*
**790 S.W. 2d** *654* **(Tex. Crim. App. 1990)** ................................................ **36**

*Berry v. State,* **13-01-241-CR, 2002 WL 406978**
**(Tex. App.-Corpus Christi 2002, no pet)**
**(not designated for publication)** ............................................................ **28**

*Decker v. State,* **894 S.W. 2d 475**
**(Tex. App.-Austin 1995, pet. ref'd)** ........................................................ **29**

*Dixon v. State,* **2 S.W. 3d 263 (Tex. Crim. App. 1998)** .......................... **41**

*Ethington v. State,* **819 S.W. 2d 854 (Tex. Crim. App. 1991)** .............. **41**

*Freeman v. State,* **340 S.W. 3d 717 (Tex. Crim. App. 2011)** ........... **32-34**

*Gonzalez v. State,* **115 S.W. 3d 278**
**(Tex. App.-Corpus Christi 2003, pet. ref'd)** ........................................... **32**

*Hawkins v. State,* **135 S.W. 3d 72 (Tex. Crim. App. 2004)** ................... **19**

*Holden v. State,* **201 S.W. 3d 761 (Tex. Crim. App. 2006)** .................... **25**

*Hollier v. State,* **14-99-01348-CR, 2001 WL 951014**
**(Tex. App.-Houston [14ᵗʰ Dist] 2001, no pet)**
**(mem. op. not designated for publication)** ............................................. **28**

*Johnson v. State,* **83 S.W. 3d 229**
**(Tex. App.-Waco 2002, pet. ref'd)** ....................................................... **28-29**

*Ketchum v. State,* **199 S.W. 3d 581**
**(Tex. App.-Corpus Christi 2006, pet. ref'd)** ........................................... **20**

*King v. State,* **29 S.W. 3d 556 (Tex. Crim. App. 2000)** ......................... **36**

*Marini v. State,* **593 S.W. 2d 709 (Tex. Crim. App. 1980)** ............. **21, 26,**
.................................................................................................................. **41, 46**

*Martinez v. State,* **17 S.W. 3d 677 (Tex. Crim. App. 2000)** ................... **32**

*Matamoros v. State,* **901 S.W. 2d 470 (Tex. Crim. App. 1995)** ...... **21, 26**

*Medellin v. State,* **617 S.W. 2d 229 (Tex. Crim. App. 1981)** ................. **22**

*Mosley v. State,* **983 S.W. 2d 249 (Tex. Crim. App. 1998)** ........**33-35, 38**

*Ocon v. State,* **284 S.W. 3d 880 (Tex. Crim. App. 2009)** ..........**19-20, 27,**
.................................................................................................................. **40**

*Ovalle v. State,* **13 S.W. 3d 774 (Tex. Crim. App. 2000)** ...................... **27**

*Quinn v. State,* **958 S.W. 2d 395 (Tex. Crim. App. 1997)** .................... **26**

*State v. Villarreal,* **475 S.W. 3d 784 (Tex. Crim. App. 2015)** ..........**23-24**

*Thrift v. State,* **176 S.W. 3d 221 (Tex. Crim. App. 2005)** ......... **27, 29, 34**

*Turpin v. State,* **606 S.W. 2d 907 (Tex. Crim. App. 1980)**.................... **22**

*Valdez v. State,* **#13-14-00684-CR, 2015 WL 3799309**
**(Tex. App.-Corpus Christi 2015, no pet)**
**(mem. op. not designated for publication)**.................................**41-42, 47**

*Waldo v. State,* **746 S.W. 2d 750 (Tex. Crim. App. 1988)** .................... **28**

*Webb v. State,* **232 S.W. 3d 109 (Tex. Crim. App. 2007)**...................... **19**

*Young v. State,* **137 S.W. 3d 65 (Tex. Crim. App. 2004)** ................ **20, 46**

*York v. State,* No. PD-1753-06, 2008 WL 2677368
(Tex. Crim. App. 2008)(not designated for publication)..........35, 39-40


**Texas Statutes**

**TEX. CODE CRIM. PRO. art. 36.01 (West 2007) ..............................** 20



**Texas Rules**

**TEX. R. APP. P. 9.4 ....................................................................** 48

**TEX. R. APP. P. 21.8 ..................................................................** 25

**TEX. R. APP. P. 33.1 ..................................................................** 41

**TEX. R. APP. P. 44.2 ..............................................................** 31, 33

## NO. 13-15-00514-CR

## IN THE COURT OF APPEALS
## FOR THE THIRTEEN DISTRICT OF TEXAS
## AT CORPUS CHRISTI

JOHN KENNETH LEE……………………….………………..Appelant

v.

THE STATE OF TEXAS,…..…………………………………...Appellee

\* \* \* \* \*

## STATE'S BRIEF ON THE MERITS

\* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal

District Attorney, Stephen B. Tyler, and as Appellee in the above numbered

and entitled cause, and files this the Appellee's brief showing:

## STATEMENT OF THE FACTS

On June 16, 2014 the Appellant was charged by information with the

offense of driving while intoxicated.  [CR-I-6].  Appellant's case was called

for trial on October 19, 2015.  [RR-II-1].

Prior to the start of voir dire, prosecutor Pink Dickens informed the

Appellant that the blood sample in the case had been destroyed and that he

had just found out at noon.  [RR-II-4].  The Appellant's attorney indicated

she understood and did not request a continuance. [RR-II-4-5]. The Appellant did not urge either orally or in writing any sort of motion in limine. [RR-II-5; CR]. The Appellant elected to have punishment assessed by the jury. [CR-I-27; RR-II-6-7].

During the State's opening argument, prosecutor Jesse Landes argued that the State anticipated it would introduce evidence showing the Appellant had a blood alcohol level of .169. [RR-III-10]. The Appellant did not object to this statement at this time. [RR-III-10]. Instead the Appellant's attorney, Ms. Patti Hutson, argued in her opening statement that she did not believe the State would be able to produce any blood evidence. [RR-III-14].

The State then called Carlos Vasquez to testify. [RR-III-16]. Mr. Vasquez described how on October 11, 2013, he was stopped at a red light when his vehicle was struck from behind by another vehicle. [RR-III-18]. Mr. Vasquez also established he was injured in this incident, receiving a concussion that required him to receive medical treatment at a hospital. [RR-III-21]. Mr. Vasquez also indicated he has had lingering back problems since this incident. [RR-III-21-22]. Mr. Vasquez also testified that his truck was totaled in this incident. [RR-III-22].

The State then called Javier Sanchez to testify. [RR-III-25]. Mr. Sanchez testified to witnessing a car accident on the night of October 11,

2013. [RR-III-26-27]. Mr. Sanchez also described making contact with the driver of the vehicle who hit the other vehicle and noting that said driver "kind of smelled like alcohol." [RR-III-28]. Mr. Sanchez then identified the Appellant as the person who struck the other vehicle that night. [RR-III-29-30].

The State then called Juan Sanchez to testify. [RR-III-38]. Juan Sanchez also testified to observing a truck strike another truck the night of October 11, 2013. [RR-III-38-39]. Juan Sanchez then testified to making contact with the driver of the vehicle that struck the other vehicle and noted that he could smell alcohol on that man. [RR-III-40-41]. Juan Sanchez also stated he thought that man was intoxicated and characterized the odor of alcohol coming from him as "pretty strong." [RR-III-41].

The State next called Sergeant Jason Sager of the Victoria Police Department. [RR-III-47]. Sergeant Sager identified the Appellant as a person he encountered while responding to an accident the night of October 11, 2013. [RR-III-48-49]. Sergeant Sager than established it was the Appellant who had caused the accident. [RR-III-51]. Sergeant Sager also testified that the Appellant had glassy and bloodshot eyes, had an odor of alcohol on his breath, and had slurred speech. [RR-III-51-52]. Sergeant

Sager also indicated the Appellant told him that the Appellant had only consumed non-alcoholic beverages that night. [RR-III-52].

Sergeant Sager than explained he administered the horizontal gaze nystagmus (HGN) test to the Appellant because if the Appellant had only been drinking non-alcoholic beverages he would not show any nystagmus. [RR-III-53]. Sergeant Sager also confirmed the Appellant did not claim to have any brain injury or neurological damage. [RR-III-56]. Sergeant Sager then explained that four out of six clues indicated intoxication on the HGN and that the Appellant showed all six clues on the HGN test. [RR-III-58].

Sergeant Sager also explained that because Mr. Vasquez had been injured in the car accident, the police decided to pursue a mandatory blood draw at the hospital. [RR-III-59]. Sergeant Sager then further explained that after consulting with the Victoria County Criminal District Attorney it was also decided to pursue a search warrant for a blood draw. [RR-III-59].

The State next called Officer J. J. Houlton of the Victoria Police Department. [RR-III-75]. Officer Houlton described responding to an accident the night of October 11, 2013 and identified the Appellant as a person who was at the crash scene when he arrived there that night. [RR-III-76-77]. Officer Houlton also noted that he smelled alcohol coming from the Appellant's breath and person. [RR-III-79]. Officer Houlton also noted

observing an open bottle of the alcoholic beverage Crown Royal in the Appellant's vehicle. [RR-III-80]. Officer Houlton further established that this bottle was "a little over half full." [RR-III-80]. Officer Houlton also established the Appellant had bloodshot eyes and that from questioning the Appellant he was able to determine the Appellant did not have any head trauma. [RR-III-87].

Officer Houlton then testified that he administered the HGN test to the Appellant who showed all six clues. [RR-III-89]. Officer Houlton then described how the Appellant was "very aggressive" towards him due to him being a "rookie cop." [RR-III-92]. Officer Houlton further testified that the Appellant took five times to actually start the Walk and Turn field sobriety test and failed the test when he finally attempted it. [RR-III-92, 94-96]. Officer Houlton then established the Appellant refused to attempt the One Legged Stand field sobriety test, claiming he had a leg injury. [RR-III-96]. Officer Houlton then testified that the Appellant claimed to have only consumed non-alcoholic beverages that night. [RR-III-97].

Officer Houlton then sponsored the admission of his in-car video into evidence. [RR-III-99; State's Exhibit 1]. That video showed the Appellant was offered the opportunity to voluntarily provide both a breath and blood

sample and declined to provide a sample. [RR-III-101-102; State's Exhibit 1].

Officer Houlton then stated he believed the Appellant was intoxicated that night [RR-III-105] and also stated that he could tell the Appellant had lost the use of his physical facilities from Appellant's "swayed stance" and inability to walk a straight line. [RR-III-106].

Officer Houlton then described transporting the Appellant to Citizens Medical Center for a blood draw and indicated the Appellant was "very upset" about being taken to the hospital and that because of the Appellant's agitation he had to call for assistance. [RR-III-107]. Officer Houlton then described observing the two blood draws done at the hospital and taking the blood samples from the hospital to the Victoria Police Department. [RR-III-107-111].

The State next called Beatrice Salazar, the phlebotomist who took the Appellant's blood samples in this case. [RR-III-142, 145]. The Appellant immediately objected to Ms. Salazar's testimony, insisting that since the State did not have the blood vials this witness would have nothing about which to testify. [RR-III-143-144]. The Appellant also insisted the State would not be able to prove any chain of custody for the blood evidence in

this case. [RR-III-144]. The trial court permitted the State to proceed with its questioning. [RR-III-144].

Ms. Salazar then testified at length to the procedures she utilizes to draw blood. [RR-III-146-150]. She specifically testified that they always use alcohol-free swabs "on all alcohol draws" [RR-III-147]. She also testified to the time when she completed the blood draw of the Appellant. [RR-III-148]. Ms. Salazar also confirmed that she received from the police the vials she used for taking the Appellant's blood and confirmed there was anti-coagulant powder in the vials. [RR-III-149]. Ms. Salazar also testified that she would have signed the label on the vials in this case since that is the hospital protocol for all police blood draws. [RR-III-150]. Ms. Salazar also established that she handed the blood collection vials over to the police and that the blood was taken in a sanitary location. [RR-III-150].

The State next called Sergeant Kelly Luther of the Victoria Police Department. [RR-III-160]. Sergeant Luther testified to being the head of the Victoria Police Department Crime Scene Unit and explained the procedures for sending blood samples to a forensic laboratory for testing. [RR-III-161-162]. Sergeant Luther also confirmed that the blood samples for the Appellant had been destroyed. [RR-III-163].

The State next called Gene Hanson, section supervisor at the Texas Department of Public Safety in Weslaco. [RR-III-167]. The State attempted to question Mr. Hanson about whether he received a blood sample from the Appellant and the Appellant objected. [RR-III-168]. The trial court then convened a hearing outside the presence of the jury concerning this testimony. [RR-III-168-169].

Once the jury was out of the room, the Appellant made a series of objections including a request for a mistrial based on the State's opening argument. [RR-III-170-171]. The Appellant did not request an instruction for the jury to disregard the portion of the State's opening argument concerning the blood test results. [RR-III-170-171]. The Appellant counsel, Ms. Hutson, also conceded that she knew the State did not have the blood test evidence prior to the State's opening argument. [RR-III-171].

The State responded to this argument by explaining why it believed it would be able to get the blood test results admitted even without the actual blood samples. [RR-III-172-173].

The Appellant would twice more during this hearing request a mistrial. [RR-III-176, 179]. Throughout this hearing the Appellant never requested that the jury be instructed to disregard the State's opening statement. [RR-III-170-179].

The trial court subsequently asked the State how it intended to prove that the blood that was tested at the forensic laboratory came from the Appellant. [RR-III-180]. The prosecutor answered in response to this inquiry that Officer Houlton testified to the Victoria Police Department case number and that case number would match the number on the Department of Public Safety laboratory results and that there would also be other identifiers on the laboratory report that would match up with the Appellant. [RR-III-180].

The Appellant then proceeded with the voir dire examination of Mr. Hanson. [RR-III-182]. During that examination, the Appellant asked Mr. Hanson how he would be able, without the actual blood vials, to establish that the blood he tested came from the Appellant. [RR-III-186]. Mr. Hanson answered this question by explaining that part of his case notes includes documenting that he verified that the name on the submission form matches the name on the blood tube, and that the laboratory case number is the same case number that is on the blood tube kit box. [RR-III-187]. Mr. Hanson also noted that he would have noted any such discrepancies if the name or number had not matched. [RR-III-187].

After hearing Mr. Hanson's testimony, the trial court ruled it would allow the State to continue with trying to prove the chain of custody in the

case. [RR-III-188]. The trial court also issued a motion in limine against the State asking any question concerning the actual blood results without first getting clearance from the court. [RR-III-188-189].

At no time during the voir dire hearing for Mr. Hanson did the Appellant make any objection against the blood test evidence based on a claim that its collection might have been unconstitutional due to at least one of the blood samples being drawn pursuant to the mandatory blood draw statute. [RR-III-169-189].

Upon trial resuming before the jury, Mr. Hanson testified to receiving a blood vial with the Appellant's name on it. [RR-III-191]. Mr. Hanson also testified that this vial was sealed and there was no evidence that it had been subject to any tampering. [RR-III-191]. Mr. Hanson also confirmed that the vial had multiple identifies upon it including the name of the Appellant and a unique identification number. [RR-III-193]. The prosecutor then asked Mr. Hanson how he knew this blood sample was from the Appellant, and Mr. Hanson answered that he verified the specimen label on the blood tube with that of the submission form and both matched. [RR-III-194]. Mr. Hanson also testified that the blood tube kit itself also contained identifiers as it had the laboratory identification number as well as the initials of the submitting police agency and the dates. [RR-III-194]. Mr.

Hanson then explained that the submission form also had the laboratory number and the name of the Appellant. [RR-III-194].

The State subsequently approached the trial court in compliance with the motion in limine now in effect and informed the trial court of its intent to enter the laboratory report into evidence. [RR-III-200]. The trial court then convened another hearing outside the presence of the jury. [RR-III-200-201].

The Appellant then renewed his objections on the grounds he had not been permitted to inspect the blood evidence and to the lack of adequate chain of custody in this case. [RR-III-201-202]. The Appellant counsel, Ms. Hutson, subsequently also argued that she did not know if the blood that had been tested came from the first or second blood draw. [RR-III-202-203]. The Appellant did not make any objection based on a blood draw done pursuant to the mandatory blood draw statute being impermissible. [RR-III-201-203].

After hearing all of the arguments, the trial court sustained the Appellant's objection and ruled the blood test results would be inadmissible. [RR-III-205]. The Appellant did not renew his request for a mistrial at this point. [RR-III-205]. The Appellant also did not ask for an instruction to

disregard the portion of the State's opening argument concerning the blood tests results. [RR-III-205].

At the conclusion of the State's case, the Appellant rested without presenting any evidence. [RR-III-207]. At no point in the trial did the Appellant present any documentary or testimonial evidence to support his contention that he had a leg injury at the time of the charged offense. [RR-III].

After both sides had rested a charge conference was held, and the Appellant again asked for a mistrial due to the State's opening argument. [RR-III-208]. The trial court denied that request. [RR-III-208]. The Appellant again did not request any sort of instruction to disregard. [RR-III-208].

The charge of the court instructed the jury that the evidence in this case was the testimony presented and the exhibits admitted in open court. [CR-I-29; RR-III-212]. The charge further instructed the jury that the argument and statements of the attorneys are not evidence and cannot be considered in the jury's determination of the disputed facts in the case. [CR-I-29; RR-III-212]. The charge also instructed the jury that they could only find the Appellant guilty of the charged offense if they found it proven by the evidence beyond a reasonable doubt. [CR-I-29; RR-III-212].

In the Appellant's closing argument, Ms. Hutson reminded the jury that the State had failed to submit any blood test evidence to the jury. [RR-III-222]. Ms. Hutson also stressed that she was the one who had told the jury the truth rather than the State. [RR-III-222]. Ms. Hutson then reminded the jury of the trial court's instruction that the statements of counsel were not evidence. [RR-III-222].

The State's closing argument made no references to the blood test evidence. [RR-III-215-220, 224-226].

The jury found the Appellant guilty of the charged offense. [CR-I-32]. The jury subsequently sentenced the Appellant to 180 days in the county jail and a $1,800 fine. [CR-I-37].

On October 23, 2015 the Appellant filed a motion for new trial. [CR-I-3, 51-60]. Amongst other grounds, that motion alleged that the trial court had committed reversible error by not granting Appellant's motion for a mistrial [CR-I-51] and also included an allegation of prosecutorial misconduct in claiming that the prosecutors on the case mentioned the blood test results in the State's opening argument despite knowing the State would not be able to get the blood test results admitted at trial. [CR-I-52].

On October 28, 2015 the State filed an answer to the Appellant's motion for new trial. [CR-I-67-85]. The State's answer included sworn

affidavits from the two prosecutors on the case, Mr. Jesse Landes and Mr. Pink Dickens where both explained why they believed the blood test evidence would be admissible in the case. [CR-I-79-80; 82-83]. The trial court did not rule on Appellant's motion for new trial. [CR-I; SCR-I].

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion in denying Appellant's motion for a mistrial. A mistrial is to be granted in only the most extreme of circumstances when no lesser remedy can correct the error and that is not applicable in this case.

The State's opening argument did not even constitute error. It is permissible for an opening argument to include an explanation of what evidence the State in good faith expects to introduce at trial, and it does not constitute error if the State references evidence it intends to introduce in its opening argument but which the State ultimately fails to get into evidence during the trial. In this case the State clearly acted in good faith in referencing the blood test evidence. The State had good reason to believe it could establish the necessary chain of custody to make that evidence admissible and made a good faith effort to establish that chain prior to offering the blood evidence. It also was not unreasonable for the State to attempt to offer blood evidence that might have been obtained through the

mandatory blood draw statute given that the legal status of that statute had not been definitively decided at the time this case went to trial. Furthermore, the trial court has already implicitly made a credibility determination that the trial prosecutors were acting in good faith in this case. The Appellant submitted a motion for new trial alleging prosecutorial misconduct over the State's opening argument. Both of the trial prosecutors in this case responded to this allegation by including affidavits explaining why they believed the blood test evidence would be admissible. The trial court did not convene a hearing on Appellant's motion or submit a written order within the time frame for acting on the motion thus denying that motion by operation of law, and since the trial court denied Appellant's motion it must be presumed the trial court found the affidavits of the prosecutor's credible and concluded they had acted in good faith. Accordingly, the State's opening argument was proper, and since that opening argument was proper the trial court had no justification to grant a mistrial in regards to that argument.

In the alternative, even if the prosecution's reference to the blood test results in the State's opening argument constituted an error, that error still did not justify granting a mistrial since the Appellant had lesser remedies that could have cured the error. A prompt instruction to disregard will

typically cure any error from the improper admission of evidence, and such an instruction would have been effective in this case. This is especially true since the trial court also specifically instructed the jury that the statements of the attorneys were not evidence and could not be considered for resolving disputed issues of fact, and that instruction in conjunction with a prompt instruction to disregard would certainly have been sufficient to cure any potential harm from an improper opening argument. Thus since there were viable lesser remedies than the extreme sanction of a mistrial, the trial court had no justification to grant a mistrial and therefore did not abuse its discretion by denying the Appellant's motion for a mistrial.

In the alternative, even if there was error from the State's opening argument that error was harmless. Claims of error related to a prosecutor's arguments are reviewed as non-constitutional errors which means they are to be disregarded unless a substantive right of the Appellant was violated. In this case it is clear no such substantive right was violated. The severity of any error related to the State's opening argument would be minor since the State only mentioned the blood test results a single time and since the State was clearly acting in good faith in believing it would be able to present that evidence to the jury. Additionally, the trial court took effective curative action by instructing the jury that the statements of the attorneys were not

evidence and could not be considered for resolving disputed factual issues. Juries are presumed to follow the trial court's instructions, and the State did not attempt to undercut this instruction. Thus it must be concluded this instruction was effective. Furthermore, there was overwhelming evidence of Appellant's guilt independent of the State's opening argument. The State presented evidence that the Appellant struck an idling vehicle, showed multiple physical characteristics consistent with intoxicated behavior, displayed aggressive and deceptive behavior consistent with intoxication, failed two field sobriety tests and refused to perform a third, was found with an open container of alcohol in his vehicle, and refused to voluntarily provide a breath or blood sample when given the chance. With that extensive body of evidence it is clear the Appellant would have been convicted regardless of the State's opening argument. Therefore when balancing those three factors, it is clear that any error from the State's opening argument did not affect the substantive rights of the Appellant, and thus any such error must be disregarded.

Additionally, the Appellant has waived any claim of error related to the denial of his motion for mistrial by failing to first seek a less drastic remedy than a mistrial and by failing to make a timely objection.

Texas law holds that when a defendant requests a mistrial without first seeking less drastic remedies, he waives any claim of error related to the denial of his mistrial if a lesser remedy could have solved the problem. The Appellant failed to seek an instruction to disregard and such an instruction would have cured Appellant's claimed error if granted. Therefore by failing to first seek that lesser remedy, Appellant has waived any claim of error related to the State's opening argument and the denial of his motion for mistrial.

The Appellant has also waived any claim of error related to the State's opening argument by failing to object to that argument at the time it was made. The Appellant's entire basis for objecting to the admission of the blood test results was due to the blood test vials being destroyed and the Appellant already knew those vials had been destroyed prior to the State making its opening argument. Thus the Appellant already had all the information necessary to know he needed to object at the time the State mentioned the blood test results in his opening argument. Nor can the Appellant claim that the cumulative force of subsequent testimony alleviates him of the need to have made a timely objection earlier. None of the subsequent evidence presented by the State to attempt to get the blood test evidence admitted was at all harmful to the Appellant, and at any rate Texas

law is clear that an objection must be made at the earliest opportunity. The Appellant failed to object to the State's opening argument at the time it was made and thus waived any claim of error related to that argument.

## ARGUMENT

### I. The trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

#### A. Legal standard for reviewing denial of a motion for mistrial.

Appellate courts are to review a trial court's decision on whether or not to grant a mistrial under an abuse of discretion standard. *Webb v. State,* 232 S.W. 3d 109, 112 (Tex. Crim. App. 2007). This requires evaluating the evidence in the light most favorable to the trial court's ruling and upholding the ruling so long as it falls within the zone of reasonable disagreement. *Id.* As such a trial court abuses its discretion in denying a motion for mistrial only if no reasonable view of the record could support the trial court's ruling. *Id.*

It also must be remembered that a mistrial is only justified in extreme circumstances where prejudice is incurable. See *Hawkins v. State,* 135 S.W. 3d 72, 77 (Tex. Crim. App. 2004.) A mistrial is an extreme remedy and thus should only be granted if lesser remedies will not serve to remedy an error. See *Ocon v. State,* 284 S.W. 3d 880, 884-885 (Tex. Crim. App.

2009)(emphasis added). Additionally, if a movant does not seek less extreme remedies first than the trial court's judgment will not be reversed if the problem could have been cured by a less drastic remedy. See *Young v. State,* 137 S.W. 3d 65, 70 (Tex. Crim. App. 2004). With that legal framework in mind, it is clear the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

### B. The State's argument was not improper and thus there was no justification for granting a mistrial.

There was nothing improper in the State arguing that the evidence would show the Appellant had a blood alcohol level of .169 in the State's opening argument. [RR-III-10]. Article 36.01 of the Texas Code of Criminal Procedure establishes that the purpose of the State's opening argument is to "state to the jury the nature of the accusation and <u>the facts which are expected to be proved by the State</u> in support thereof." Thus opening statements are permitted to include an outline of facts which the prosecution in good faith expects to prove. See *Ketchum v. State,* 199 S.W. 3d 581, 597 (Tex. App.-Corpus Christi 2006, pet. ref'd). Informing the jury of the blood test results the State anticipated it would be able to prove at trial certainly falls within the scope of giving the jury an outline of facts which the prosecution in good faith expects to prove, and as such the prosecutor's

opening statement was proper argument.

Now as it turns out the State was not able to get the blood test results accepted into evidence in this case. [RR-III-205]. But that failure does not make the prosecution's opening statement error. The Court of Criminal Appeals has already established that it is not error for a prosecutor to tell the jury in opening statement what he expects to prove, even if he does not later offer such proof at trial. See *Matamoros v. State,* 901 S.W. 2d 470, 475 (Tex. Crim. App. 1995); *Marini v. State,* 593 S.W. 2d 709, 715 (Tex. Crim. App. 1980). And obviously if it is not error to reference evidence in the prosecution's opening statement that the State ultimately does not even try to submit to the jury then it would not be error to reference evidence in the prosecution's opening statement that the State makes a good faith effort to get admitted into evidence but is ultimately unsuccessful.

It is clear the prosecution believed in good faith it would be able to get the blood test evidence admitted despite the lack of blood vials as the State made substantial efforts to lay the necessary foundation for the admission of the blood evidence. The State called Officer J. J. Houlton the police witness who took the Appellant to the hospital, who observed the two blood draws conducted on the Appellant, and who transported Appellant's blood back to the Victoria Police Department and questioned him about the

blood draws. [RR-III-107-111]. The State also called the phlebotomist who took the Appellant's blood samples, Ms. Beatrice Salazar, and questioned her about her credentials to perform blood draws, about how the blood draws were done in this case, and about whether the blood draw was done in a sanitary place. [RR-III-143-150]. The State called the officer who inadvertently destroyed the blood vials, Sergeant Kelly Luther, to explain how that happened. [RR-III-163]. And the State called the forensic scientist, Mr. Gene Hanson, who actually tested the Appellant's blood in this case. [RR-III-167].

The State also had good cause to believe Mr. Hanson would be able to make the blood test evidence admissible. Mr. Hanson testified outside the presence of the jury that he knew the blood he tested was from the Appellant because he verified that the name and the laboratory number matched between the submission forms and the blood tube kit box his laboratory received. [RR-III-187]. Mr. Hanson would later repeat this same testimony before the jury. [RR-III-193]. It was not unreasonable for the State to believe, based on the testimony of Mr. Hanson, that the blood test results would be admissible even without the actual physical blood vials. Texas law already holds that the failure to preserve breath test ampoules goes to the weight and credibility of the breath test evidence rather than its

admissibility. See *Turpin v. State,* 606 S.W. 2d 907, 917-918 (Tex. Crim. App. 1980). It is not unreasonable to believe a similar standard would be applied for blood evidence. And with the testimony of Ms. Salazar and Mr. Hanson, the State had the beginning and end of the chain of custody from the time the blood was taken until the time the blood was tested at the laboratory. If a chain of custody is complete until the evidence reaches the laboratory then any further objections go to the weight of the evidence rather than its admissibility. See *Medellin v. State,* 617 S.W. 2d 229, 232 (Tex. Crim. App. 1981). Thus the State had good reason to believe it could establish the necessary chain of custody to get the blood evidence admitted (and indeed the State did establish the necessary chain of custody).

Appellant now argues that even aside from chain of custody issue the blood test evidence still could not have been admitted since the State cannot prove the blood that was tested was not the blood taken as a result of an impermissible mandatory blood draw. That argument misses the key point that at the time of this trial, Texas law was not definitively settled on that issue.

This case went to trial on October 19, 2015. [RR-II-1]. The *Villarreal* case, cited by the Appellant for the proposition that mandatory blood draws are only permissible when there are exigent circumstances, was

initially decided by a 5 to 4 majority on November 26, 2014. See *State v. Villarreal,* 475 S.W. 3d 784 (Tex. Crim. App. 2015). However, the Court of Criminal Appeals granted rehearing on that case on February 25, 2015. *Id.* Given the narrow majority for the original holding and the fact that the Court of Criminal Appeals had decided to rehear the case, there was considerable belief through much of 2015 that the Court of Criminal Appeals was intending to change its ruling and uphold the mandatory blood draw statute after all.

Now as it turned out that did not happen. The Court of Criminal Appeals changed its mind concerning the grant of rehearing and denied a rehearing on December 16, 2015. *Id.* However, that date was nearly two months after the trial in this case. At the time this trial was pending, it was still believed the Court of Criminal Appeals was going to re-consider the mandatory blood draw statute and that there was a very good chance they would rule in favor of the statute. Thus it was not an act of bad faith for the prosecutors in this case to attempt to admit evidence that may have been obtained pursuant to that statute. The prosecutors had good reason to believe at the time of trial that even if blood evidence obtained through the mandatory blood draw statute would still be admissible and thus they were

still acting in good faith by including a reference to that evidence in their opening argument.

It must also be noted that the trial court has implicitly already determined that the prosecutor's in this case were acting in good faith when they attempted to introduce the blood test evidence. Appellant's motion for new trial included an accusation of prosecutorial misconduct against the trial prosecutors based on referencing the blood test results in the State's opening argument. [CR-I-52]. The State's response to that motion included affidavits from both Mr. Landes and Mr. Dickens explaining why they believed they would be able to get the blood test evidence admitted. [CR-I-79-80, 82]. The trial court did not convene a hearing or issue a writing ruling on Appellant's motion for new trial. [CR; SCR; RR]. Thus pursuant to Texas Rule of Appellant Procedure 21.8(c) the trial court denied Appellant's motion for new trial.

A trial court may resolve a motion for new trial and make credibility determinations based on affidavits if the affiants have already appeared in their court. See *Holden v. State,* 201 S.W. 3d 761, 764 (Tex. Crim. App. 2006). Mr. Landes and Mr. Dickens had both appeared before the trial court, and thus the trial court was fully qualified to make credibility determinations about the truth of their affidavits based on the affidavits

themselves. And since the trial court ultimately denied Appellant's motion for new trial, it must be presumed the trial court found the affidavits of Mr. Landes and Mr. Dickens to be credible. See *Quinn v. State,* 958 S.W. 2d 395, 402 (Tex. Crim. App. 1997)(holding that when reviewing the denial of a motion for new trial, the reviewing court must evaluate the evidence in the light most favorable to the trial court's ruling.) And the trial court's credibility determination that Mr. Landes and Mr. Dickens were acting in good faith when the State made its opening argument is entitled to almost total deference on appeal. See *Id.* at 401 (holding that reviewing courts must afford almost total deference to the trial court's determinations on historical facts and mixed questions of law and fact that turn upon evaluations of credibility and demeanor.) Thus it must be concluded the prosecutors on this case sincerely believed they would be able to get the blood test results admitted into evidence at the time of the State's opening argument.

It is clear the reference to the blood test results in the prosecutor's opening statement was a statement concerning the evidence the prosecution intended to present in this case that was made in good faith. Thus that statement was proper opening argument and did not constitute error even though the prosecution ultimately failed to get the blood test evidence admitted. See *Matamoros,* 901 S.W. 2d at 475; *Marini,* 593 S.W. 2d at 715.

And since the prosecution's opening statement did not constitute error there was no justification for the trial court to do something as extreme as grant a mistrial. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

**C. A mistrial was not required since an instruction to disregard would have cured any error.**

In the alternative, even if it is concluded the State's opening argument did constitute error, the trial court still did not abuse its discretion by denying a mistrial since there were lesser remedies available that could have cured any error.

As previously discussed, a mistrial is an extreme remedy that should only be granted if lesser remedies will not serve to remedy an error. See *Ocon,* 284 S.W. 3d at 884-885. An instruction to disregard is one such appropriate lesser remedy that could have cured any error in this case since a prompt instruction to disregard will ordinarily cure error associated with improper evidence being brought before the jury. See *Ovalle v. State,* 13 S.W. 3d 774, 783 (Tex. Crim. App. 2000). The presumption is that a jury obeys the trial court's instructions. See *Thrift v. State,* 176 S.W. 3d 221, 224 (Tex. Crim. App. 2005). Therefore, it must be presumed if the trial court had instructed the jury to disregard the prosecutor's reference to the blood

level that was made in his opening statement then the jury would have followed that instruction. See *Waldo v. State,* 746 S.W. 2d 750, 753 (Tex. Crim. App. 1988).

The Appellant has not been able to provide any case law to support his contention that a reference to blood test results in opening argument is so egregious an error as to be incurable even with a limiting instruction. However, it is clear that instructions to disregard have been deemed adequate to cure error under far more inflammatory circumstances than those at issue in the present case. See *Adams v. State,* 156 S.W. 3d 152, 157-158 (Tex. App.-Beaumont 2005, no pet)(holding a reference to a Portable Breath Test having a result above .08 was cured by an instruction to disregard); *Hollier v. State,* 14-99-01348-CR, 2001 WL 951014 at 5 (Tex. App.-Houston [14th Dist] 2001, no pet)(mem. op. not designated for publication)(holding that an instruction to disregard cured the improper testimony correlating HGN test results with blood-alcohol levels); *Berry v. State,* 13-01-241-CR, 2002 WL 406978 at 2 (Tex. App.-Corpus Christi 2002, no pet.)(not designated for publication)(holding that an instruction to disregard was sufficient to cure any error from the improper admission of a defendant's prior convictions); *Johnson v. State,* 83 S.W. 3d 229, 232 (Tex. App.-Waco 2002, pet. ref'd)(holding that an instruction to disregard was

sufficient to cure error from the prosecutor commenting on a defendant's post-arrest silence); *Decker v. State,* 894 S.W. 2d 475, 477 (Tex. App.-Austin 1995, pet. ref'd)(holding that an instruction to disregard was sufficient to cure any error from the prosecutor's voir dire implying the defendant might have molested other children.) If an instruction to disregard can cure something as extreme as a prosecutor implying that a defendant might be a serial child sex offender then an instruction to disregard is certainly sufficient to cure a statement about blood test results.

This is especially true in this case because the trial court took specific action that minimized any risk the jury might improperly consider the State's reference to blood test results in its opening argument by instructing the jury both orally and in writing that the statements of attorneys were not evidence and could not be used to resolved disputed issues of fact in the case. [CR-I-29; RR-III-212]. It is presumed the jury will follow the trial court's instructions. *Thrift,* 176 S.W. 3d at 224. And indeed our entire justice system is based on the principle that juries take their civic responsibility seriously and therefore will follow the instructions they receive from the trial court. Nor is there any reason to believe the jury in this case disregarded the trial court's instructions. Thus it must be concluded the jury did follow the trial court's instructions not to consider the

opening statements of the attorney's as evidence that could be considered for resolving any disputed fact questions in the case.

Nor does the fact that the State called several witnesses to try and make the blood test evidence admissible mean that a limiting instruction would have proven insufficient to cure any error. Nothing in the testimony of Officer Houlton (concerning his observations about the blood test) [RR-III-107-111], Ms. Salazar [RR-III-143-158], or Mr. Hanson [RR-III-167-168, 190-201, 205-206] introduced any evidence that was even slightly harmful to the Appellant. Knowing the procedure by which blood samples are taken or even the procedure for how a blood sample is tested cannot reasonably be said to harm a defendant if the blood test results themselves never make it into evidence. And the testimony of Sergeant Luther was outright beneficial to the Appellant as it called into question the integrity of the Victoria Police Department's entire investigation in this matter. [RR-III-160-167]. Thus none of this testimony would have harmed the Appellant or made it so an instruction to disregard would have been ineffective in this case.

Even by itself a prompt instruction to disregard would have been sufficient to cure any error from the State's opening argument. And an instruction to disregard in conjunction with a charge of the court that

specifically disallows considering the attorney's statements as evidence would have been even more effective at curing any potential harm from any improper portions of the State's opening argument.  As such it is clear the Appellant had access to a lesser remedy than the extreme sanction of a mistrial that could have cured any potential error from an improper opening argument by the State.  The fact that the Appellant declined to ever request an instruction to disregard [RR-III] is immaterial.  The Appellant could have sought such a remedy if he had so desired, and thus there was no justification for the trial court to grant a mistrial.  As such the trial court did not abuse its discretion in denying the Appellant's motion for a mistrial.

### D.  Any error from the State's opening statement was harmless.

In the alternative, even if the State's opening argument was error such error was harmless and thus can be disregarded in accordance with the provisions of Rule 44.2(b) of the Texas Rules of Appellate Procedure.

Appellant attempts to claim that any claim of error related to the blood test evidence should be subject to constitutional error review and specifically claims his right to confront the witnesses against him was violated.  This argument is entirely inconsistent with established Texas law.

Appellant's entire appeal is based around a claim that the State improperly injected inadmissible facts into this trial through the State's

opening argument. The Court of Criminal Appeals has already established that when a prosecutor's argument includes improper references to facts that are not in evidence and are not inferable from the evidence that error is non-constitutional error. See *Freeman v. State,* 340 S.W. 3d 717, 728 (Tex. Crim. App. 2011); see also *Martinez v. State,* 17 S.W. 3d 677, 692 (Tex. Crim. App. 2000)(holding that comments upon matters outside the record, while outside the permissible areas of jury argument, do not appear to raise any unique concerns that would require them to be treated as constitutional error and thus are treated as non-constitutional errors.)

Now admittedly both *Freeman* and *Martinez* were dealing with accusations of improper argument in closing argument rather than opening argument, however there is no logical reason to treat opening argument different from closing argument in this matter. However, if anything an improper statement in opening argument is less damaging than an improper statement in closing argument since any error in opening argument can be undone over the course of the trial, whereas an error in closing argument will be one of the last things the jury hears on the case. See *Gonzalez v. State,* 115 S.W. 3d 278, 285-286 (Tex. App.-Corpus Christi 2003, pet. ref'd)(holding that the damage from a prosecutor's improper comparison of a defendant to Osama Bin Laden, al-Qaeda, and the Mexican Mafia could

not be attenuated over the course of the trial since it occurred near the end of the trial.) Thus if errors in closing argument (that are likely to be more damaging than errors in opening argument) are reviewed as non-constitutional error than errors in opening argument should certainly be reviewed under the non-constitutional error standard.

For non-constitutional error, any error that does not affect the substantive rights of the defendant must be disregarded. *Freeman,* 340 S.W. 3d at 728; TEX. R. APP. P. 44.2(b). To determine if a defendant's substantive rights were affected by improper argument it is necessary to balance: 1) the severity of the misconduct (i.e. the magnitude of the prejudicial effect of the prosecutor's comment), 2) any curative measures adopted to cure the misconduct, and 3) the certainty of the conviction absent the misconduct (i.e. the strength of the evidence supporting the conviction). See *Mosley v. State,* 983 S.W. 2d 249, 259 (Tex. Crim. App. 1998). In this case all of those factors favor a finding that the Appellant's substantive rights were not violated.

The severity of any misconduct in this case was obviously small. The prosecution mentioned the blood test results a single time in his opening argument and then never mentioned them again for the remainder of the trial. [RR-III]. And as already discussed, the prosecution was acting in

good faith in believing this evidence would be admissible and therefore that mentioning the blood test results was proper opening argument. Therefore it cannot be said the State's opening argument represented a willful and calculated effort to deprive the Appellant of a fair and impartial trial. See *Freeman,* 340 S.W. 3d at 728. Thus this first *Mosley* factor favors a finding that the Appellant's substantive rights were not affected by the State's opening argument.

There also was an effective curative measure in this case given that the trial court specifically instructed the jury both orally and in writing that the statements of the attorneys were not evidence and could not be used to resolve disputed factual statements. [CR-I-29; RR-III-212]. Now it is true that this instruction was not a specific instruction to disregard the State's opening argument, but the Appellant never requested that the jury be instructed to disregard the State's opening argument. [RR-III]. In the absence of a request for a specific instruction to disregard from the defense, this instruction was clearly sufficient. As previously mentioned it is presumed that the members of the jury will follow the trial court's instructions. *Thrift,* 176 S.W. 3d at 224. Therefore it must be presumed the jury followed this instruction. And the State respected the trial court's instruction and did not make any references to the blood test results in its

closing argument. [RR-III-215-220, 224-226]. It has been held that when a prosecutor does not obey the trial court's instructions those instructions cannot be deemed to have been effective. See *York v. State,* No. PD-1753-06, 2008 WL 2677368 at 5 (Tex. Crim. App. 2008)(not designated for publication). Such a holding would seem to necessarily imply the inverse as well, that when a prosecutor respects a trial court's ruling the ruling is effective. Accordingly, the second *Mosley* factor also favors a finding that the Appellant's substantive rights were not affected by the State's opening argument.

There was also overwhelming evidence of the Appellant's guilt. The evidence at trial showed the Appellant drove into a vehicle that was sitting at a red light. [RR-III-18, 26-27, 38-39]. The Appellant was positively identified as the driver who caused that accident. [RR-III-29-30]. Multiple witnesses, both civilian and law enforcement established that the Appellant smelled of alcohol at the time of this incident. [RR-III-28, 41, 52, 79]. There was also testimony that the Appellant displayed multiple indications of intoxication including bloodshot eyes [RR-III-51, 87], slurred speech [RR-III-51], a swayed stance [RR-III-92, 106], being unable to walk a straight line [RR-III-106], and aggressive behavior. [RR-III-92, 107]. And

there was evidence that a half-filed open container of alcohol was found in the Appellant's vehicle in easy reach of the Appellant. [RR-III-80].

There was also testimony that the Appellant made false statements to the police regarding whether he had been drinking alcohol that night. [RR-III-52, 97]. False statements related to a criminal offense are relevant evidence as consciousness of guilt evidence. See *King v. State,* 29 S.W. 3d 556, 565 (Tex. Crim. App. 2000).

There was also evidence that the Appellant twice failed the HGN field sobriety test [RR-III-58, 89], evidence that the Appellant failed the Walk and Turn field sobriety test, [RR-III-92, 94-96] and evidence that the Appellant refused to perform the One Legged Stand field sobriety test. [RR-III-96]. Evidence that a defendant refused to perform a field sobriety test can also be considered as evidence of intoxication against a defendant in a driving while intoxicated case. See *Barraza v. State,* 733 S.W. 2d 379, 381 (Tex. App.-Corpus Christi, *aff'd,* 790 S.W. 2d *654* (Tex. Crim. App. 1990).

And there was evidence that when given the opportunity to provide a breath or blood sample, the Appellant refused to do so. [State's Exhibit 1]. Evidence that a defendant refused to provide a breath or blood sample can also be considered as evidence proving intoxication in a driving while intoxicated case. See *Barraza,* 733 S.W. 2d at 381.

Now the Appellant did provide an explanation for why he refused to do the one legged stand when he claimed he had a leg injury. [RR-III-96] However, that explanation is unlikely to have helped the Appellant's case. To begin with the jury would have little reason to believe the Appellant's claim since the Appellant had already been caught being untruthful about not having consumed any alcoholic beverages that night [RR-III-52, 97] (a claim the jury would have little reason to believe given the great body of evidence that supported that the Appellant had been drinking), and given that the Appellant provided no substantiating evidence to support this claim. [RR-III].

And even if the jury believed Appellant's unsubstantiated claim about having a leg injury that would likely just furnished even further proof of Appellant's intoxicated condition, since if Appellant in fact had a leg injury it would raise the question why he attempted to perform the Walk and Turn field sobriety test without first notifying the police about his injury. Attempting to do a test requiring you to walk a narrow line on an injured leg would show mental impairment and thus would just go to further establish the Appellant was intoxicated at the time of the charged offense.

At any rate, regardless of how the jury resolved the question of Appellant's explanation for not doing the One Legged Stand field sobriety

test, it is clear that between the evidence of Appellant's bad driving, his physical indications of intoxication, his aggressive and deceitful behavior, his failure on the two field sobriety tests he attempted, the open container of alcohol that was found in his vehicle, and his refusal to voluntarily provide a breath or blood sample there was overwhelming evidence that the Appellant committed the offense of driving while intoxicated. Accordingly, the third *Mosley* factor also supports a finding a finding that the Appellant's substantive rights were not affected by the State's opening argument.

With all three *Mosley* factors favoring a finding that the Appellant's substantive rights were not affected by the State's opening argument, it is clear that any error from that argument was harmless and must be disregarded.

## II. The Appellant has waived any claim of error related to the denial of his motion for a mistrial.

In addition to a mistrial not being warranted on the merits in this case, the Appellant has also waived any claim of error related to the denial of his motion for a mistrial due to both failing to pursue a lesser remedy than a mistrial and due to failing to make a timely objection as is required under Rule 33.1(a)(1) of the Texas Rules of Appellate Procedure.

## A. The Appellant waived his claim of error by not first seeking a lesser remedy than a mistrial.

The preferred method for a party to voice a complaint in the trial court is to first object, then if the objection is granted to seek an obstruction to disregard, and then if the instruction to disregard is granted and the party does not feel it cured the error, to move for a mistrial. See *Young,* 137 S.W. 3d at 69. The request for an instruction to disregard is only essential when such an instruction would if granted be sufficient to allow the trial to continue before an impartial jury. *Id.* at 70. However, if an instruction to disregard would have cured the alleged error, then the failure to seek such an instruction forfeits appellate review for the class of events that could have been cured by the instruction. *Id.*

In the present case, the Appellant did not make any objection at all to the State's opening argument at the time that argument was made. [RR-III-10]. The Appellant instead first asked for a mistrial based on the State referencing the Appellant's blood test results during its opening argument during the hearing that was held outside the presence of the jury concerning whether witness Gene Hanson was going to be allowed to testify to the blood test results. [RR-III-170-171]. The Appellant would subsequently ask for a mistrial on two more occasions during that hearing. [RR-III-176, 179].

The Appellant would then again request a mistrial during the charge conference. [RR-III-208]. Not once during any of these events did the Appellant ever request an instruction for the jury to disregard the portion of the State's opening argument concerning the blood test results. [RR-III-10, 170-171, 176, 179, 208]. Nor did the Appellant ever request an instruction to disregard the State's opening argument concerning the blood test results at any other moment during the trial. [RR]. Thus it is clear the Appellant has entirely failed to request a motion to disregard.

As discussed in Section I. C. of the State's answer, a motion to disregard would have been effective in this case. Therefore, the Appellant's failure to request a motion to disregard waives any claim of error related to the State's opening argument. See *Young,* 137 S.W. 3d at 70. See also *Ocon,* 284 S.W. 3d at 885 (holding that while requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, a reviewing court will not reverse a trial court's judgment if the problem could have been cured by the less drastic alternative.)

The Appellant failed to pursue any less drastic alternatives to a mistrial and in this case a less drastic alternative would have been sufficient. Therefore Appellant has waived any claim of error related to the State's

opening statement.

### B. The Appellant waived his claim of error by not making a timely objection when the State first mentioned the blood test results.

In addition to waiving his claim of error in regards to the State's opening argument by failing to first seek a lesser remedy than a mistrial, the Appellant also waived any claim of error related to that argument by failing to make a timely objection when the State first mentioned the Appellant's blood test results.

To preserve error for appellate review, the complaining party must make a timely objection. See Tex.R.App. P. 33.1(a); *Dixon v. State,* 2 S.W. 3d 263, 265 (Tex. Crim. App. 1998). The requirement of timeliness means the objection must be made at the earliest possible opportunity. *Marini,* 593 S.W. 2d at 714. If possible this should be done before the objectionable evidence is actually admitted, but if that is not possible than the objection must occur as soon as the objectionable nature of the evidence becomes apparent. See *Ethington v. State,* 819 S.W. 2d 854, 858 (Tex. Crim. App. 1991). And this requirement to make a timely objection in order to preserve an issue for appellate review applies with equal force concerning any alleged errors in opening argument. See *Valdez v. State,* #13-14-00684-CR, 2015 WL 3799309 at 2 (Tex. App.-Corpus Christi 2015, no pet)(mem. op. not

designated for publication).

In the present case the earliest possible time when the Appellant could have objected to the State's opening argument would have been during that opening argument right after the State mentioned the blood test results. [RR-III-10]. It is unquestionably that the Appellant did not object to the State's opening argument at that time. [RR-III-10]. Therefore Appellant has waived any claim of error related to the State's opening argument (which would obviously include waiving any claim of error related to the trial court denying a motion for mistrial since the Appellant's only justification for a mistrial was based on the State's opening argument.)

Appellant now attempts to argue that he had no way of knowing he needed to object to the State's argument at the time it was made. That argument flies in the face of Appellant's whole contention that it was impossible for the State to get the blood test results into evidence since the blood test tubes had been destroyed. Either it was possible to get the blood test evidence admitted (in which case it clearly was not improper for the State to reference the blood test results in its opening argument and there was no error in the State making that argument and thus no justification for the trial court to grant a mistrial), or it was not possible to get the blood test evidence admitted in which case the Appellant had all the information

necessary to lodge an objection to the State mentioning the blood test results at the time the State made its opening argument, and therefore the Appellant waived any claim of error by not objecting. Either way the Appellant is not entitled to relief.

The trial record is unmistakable that the Appellant knew the State did not have the physical blood samples prior to the State's opening argument given that the State informed the Appellant the day before opening argument was made. [RR-II-4; III-10]. And since Appellant's entire theory for why the State's opening argument was objectionable is based on the idea that there was no way the State could get the blood test evidence admitted without the physical evidence, since the Appellant already knew the State did not have the physical evidence prior to the State's opening argument, it is clear Appellant already had all the knowledge he needed to object to the State's reference to the blood test results in the State's opening argument.

It is also clear that Appellant's trial counsel already believed at the time of opening argument that the State not having the blood sample would mean the State could not get the blood test evidence admitted into evidence. Appellant's own opening statement, made mere moments after the State's specifically advised the jury that the State would not be able to get the blood test results into evidence. [RR-III-13-14]. Thus it was obvious even at that

early point in the trial that the Appellant already believed he would be able to use the inadvertent destruction of the blood vials to keep the blood test evidence from being admitted, and as such the Appellant cannot credibly argue now that he did not know he needed to object during the State's opening argument when just mere minutes after that statement was made his trial counsel was already telling the jury the State would not be able to produce any blood test evidence in the case.

Nor is the Appellant's opening argument the only evidence that the Appellant already believed he had a basis to object to the blood test evidence right from the start of the trial. The Appellant subsequently objected to the testimony of the phlebotomist, Ms. Beatrice Salazar, right at the start Ms. Salazar's testimony, arguing that Ms. Salazar should not be allowed to testify at all given that the State did not have the physical blood evidence. [RR-III-143-144]. This was not an objection to Ms. Salazar's qualifications as a phlebotomist or a challenge to how she had conducted the blood draws in this case. [RR-III-143-144]. It was instead a categorical objection to Ms. Salazar being permitted to testify at all solely because the State did not have the blood test tubes. [RR-III-143-144]. And notably this objection was made before either Ms. Salazar (who drew the blood) or Mr. Hanson (who tested the blood) had provided any substantive testimony concerning the

blood test in this case. Nor had the Appellant learned anything else so far in the trial that would have given him any reason to object to the testimony of Ms. Salazar other than the fact that the blood test vials had been destroyed. [RR]. Thus the Appellant clearly had not learned anything new between the time of the State's opening argument and the point of this objection that gave the Appellant new reason to believe the blood test results were objectionable. The Appellant had precisely the same amount of information about the blood tests at this point in the case that he had during the State's opening argument, and the sole basis for Appellant's objection to Ms. Salazar's testimony was on information the Appellant already knew prior to the State's opening argument. [RR-II-4, III-10, 143-144]. Accordingly, if the Appellant had reason to believe he could object to the blood test evidence at this point in the trial then logically he would have had the same reason to believe he could object to a reference to the blood test evidence in the State's opening argument.

Accordingly if you accept the Appellant's premise that the blood test results were not admissible due to the destruction of the blood evidence then it is clear the Appellant already had the needed information to make an objection just as soon as the State first mentioned the blood test results in its opening argument. [RR-III-10]. Yet the Appellant made no such objection.

[RR-III-10].

The Appellant now tries to argue that it is really the cumulative effect of the State's attempts to get the blood test evidence admitted that justifies a mistrial and that Appellant therefore had no obligation to lodge an objection until the State had stopped trying to get the blood test evidence admitted. As previously discussed none of the witnesses the State called to try and lay the foundation for the admission of the blood test results presented any evidence that was even slightly harmful to the Appellant. RR-III-107-111, 143-158, 167-168, 190-201, 205-206]. Thus there was clearly no harmful cumulative effect to that subsequent testimony. But even beyond Appellant's argument not being supported by the facts, it is also entirely inconsistent with established Texas law.

Objections must be made at the earliest possible opportunity. *Marini,* 593 S.W. 2d at 714. And if a party delays moving for a mistrial, and by failing to timely object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party can no more rely on an untimely motion for mistrial than it could on an untimely objection. See *Young,* 137 S.W. 3d at 70. Thus Appellant cannot now claim that later testimony made the State's opening argument more damaging to try and excuse his failure to make a timely objection. If

Appellant believed the State's opening argument was objectionable, the Appellant needed to make an objection at the time the State made that opening argument to preserve any claim of error related to the State's opening argument. The Appellant failed to make such a timely objection [RR-III-10], and thus waived any claim of error related to the State's opening argument. See *Valdez,* 2015 WL 3799309 at 2

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that this Honorable Court affirm the judgment of the trial court.

.

**Respectfully submitted,**


**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139


**ATTORNEYS FOR THE APPELLEE,**
**THE STATE OF TEXAS**

# CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellee's Brief submitted on April 26, 2016, excluding those matters listed in Rule 9.4(i)(1) is 10,355.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

# CERTIFICATE OF SERVICE

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on Arnold Hayden, P. O. Box 4967, Victoria, Texas 77903, Attorney for the Appellant, John Kenneth Lee, by electronic mail on the day of April 26, 2016.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139